WATER TECHNOLOGIES CORPORATION, Water Pollution Control Systems, Inc., Kansas State University Research Foundation, Aqua-Chem, Inc., Plaintiffs,

v.

CALCO, LTD., and William J. Gartner, Defendants.

No. 82 C 4330.

United States District Court, N.D. Illinois, E.D.

Jan. 29, 1987.

Michael R. Dinnin, Robert A. Dunn, Harness, Dickey & Pierce, Birmingham, Mich., Wm. A. VanSanten, Chicago, Ill., for plaintiffs.

Robert E. Wagner, Daniel N. Christus, Wallenstein, Wagner, Hattis, Strampel & Aubel, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

McGARR, District Judge.

On October 22, 1986, 658 F.Supp. 961, this court filed findings of fact and conclusions of law and a judgment order to the effect that the Lambert-Fina '860 and '665 patents and the Hatch '183 and '529 patents which are the subject of this litigation, were found to be valid and to have been infringed by defendants Calco, Ltd. and William J. Gartner. Plaintiffs Water Technologies Corporation, Water Pollution Control Systems, Inc., and Kansas State University Research Foundation were awarded $520,000 in actual damages plus an additional $520,000 based on the willfulness of defendants' conduct. Plaintiffs were fur-

ther awarded attorneys fees to be determined after submission of additional pleadings on that subject, and, finally, plaintiffs were awarded pre-judgment interest in an amount to be determined by virtue of a later submission to the court.

There now pends before the court the petitions of plaintiffs for costs and attorneys fees and for pre-judgment interest. Additionally, defendants Calco and Gartner have moved the court to alter or amend the judgment of October 22, 1986, and former defendant Kalnitz seeks costs and fees, all of which above-described petitions are the subject of this opinion.

Turning first to the petition of defendants Calco, Ltd. and William J. Gartner to alter or amend the judgment heretofore entered, there are two principal bases for the defendants' petition. The first is the petition of Calco, Ltd. and William J. Gartner to alter the judgment insofar as it provides that defendants are liable to plaintiffs for lost profits, and seeks to substitute therefor as a measure of damages a reasonable royalty formula. The second motion is that of William J. Gartner alone, based upon the contention that Mr. Gartner's activity in connection with the acts of infringement was *de minimus* and that his personal liability in the matter is not justified. The prayer, therefore, is to vacate the order finding personal liability for Mr. Gartner or to reduce his liability for infringement to reflect his minimal involvement in the conduct of Calco, Ltd. and his minimal profits realized from the infringement. The court is further asked to specify as a separate figure the extent of personal liability, if any, of Mr. Gartner for the reason that he is not a partner or owner of Calco.

The court turns first to the Calco-Gartner motion to alter or amend by substituting reasonable royalties for lost profits as a measure of damages. Defendants contend that, because the patent holder did not come forward with the necessary affirmative evidence to support an assessment of lost profits, there is no proof as to a reasonable probability of lost profits and the court should have instead assessed reasonable royalties. The court recognized the minimal proof on the subject of lost profits and adopted therefore the alternative measure of defendants' profits as the measure of damages, and based its assessment of that figure on its acceptance of the testimony before it, despite the argument of defendants in their motion that that testimony was unreliable.

■ Relying upon their contention that lost profits were not an adequate basis for the ascertainment of damages in this case, defendants turn to a reasonable royalty theory and compute from the evidence a reasonable royalty of $29,900, doubled per this court's conclusion of law No. 111 to a final sum of $59,800. Defendants overlook in this argument the court's conclusion that it was the activities of defendant that resulted in the breakup of the exclusive licensing agreement enjoyed by the plaintiffs, and that the evidence supported the conclusion that lost profits might be fairly anticipated at the sum established by the court. The court disagrees, therefore, with the contention that the record does not contain an adequate evidentiary support for a lost profits calculation and reaffirms the conclusion that the application of the lost profits measure of damages utilized by the court in this case fairly represented the damage to the plaintiffs and the measure of their entitlement for judgment in a way that, under the circumstances, no application of a reasonable royalty theory could fairly do. The defendants' motion to alter or amend the judgment, therefore, to recalculate the damages on a reasonable royalty theory, as distinguished from the lost profits theory used by the court, is denied.

The court turns next to the motion of William J. Gartner to alter or amend the judgment. This issue has been addressed before by the court in a ruling of November 12, 1986 from the bench after oral argument, but the issue will be addressed once again in the context of the written pleadings now before the court.

Defendant Gartner requests that the court alter or amend the judgment to vacate his personal liability for infringement or, in the alternative, to reduce his liability

for infringement by reflecting his pro rata share of participation in the complained of acts of infringement, with a specific separate Gartner liability figure.

■ Gartner argues that the dismissal of Aqua-Chem from the lawsuit at the beginning of the trial impacted unfavorably upon his ability to raise the defense that he was not guilty of the theft of the formula from Aqua-Chem nor of a breach of confidence with Aqua-Chem. The presence of Aqua Chem as a plaintiff in this case was by no means necessary in order to enable Gartner to present whatever evidence he had in support of his position that there was no misappropriation of Aqua-Chem's resin formula and no breach of confidence when he took the Aqua-Chem formula to Calco.

A review of the court's findings of fact makes clear the role of Gartner as the principal actor in the infringing acts, a role much more major than the *de minimus* participation now argued by his counsel, and that Gartner indeed did induce the infringing activities of Calco. This joint liability with Calco is appropriate under the circumstances, and Gartner's motion for a vacation of the judgment of October 22, 1986 against him, or for a modification thereof assessing his liability on a minimal basis, is denied.

The court turns now to the motion by the successful plaintiffs for costs and attorneys fees, the liability for which was adjudicated in the order of October 22, 1986, with an invitation to plaintiffs to submit pleadings and evidence in support of their costs and fees application.

The court has before it details supporting an application for an award of costs in the amount of $8,213.82, and fees in the amount of $228,822.52, together with an application for an additional $7,871.78, described as for trial expenses separately incurred. The court will treat this latter sum as a further application for costs.

■ Title 35, Section 285 of the United States Code provides: "The court, in exceptional cases, may award reasonable attorneys fees to the prevailing party." This case has, in a previous holding, been deter-mined to be an exceptional case within the meaning of that statute. Plaintiffs' prayer, therefore, for attorneys fees, is a valid one and the court will award attorneys fees under this section to plaintiffs, the prevailing parties. Section 285 refers only to attorneys fees and does not mention costs. The purpose, however, of the statutory provision allowing the court to award attorneys fees is to compensate the prevailing party for costs that would not have been incurred but for the conduct of the losing party. *Morgan Adhesives Co. v. Chemtrol Adhesives, Inc.*, 574 F.Supp. 832 (D.C.Ohio 1983), *aff'd* 765 F.2d 158, *cert. den.*, —— U.S. ——, 106 S.Ct. 130, 88 L.Ed.2d 107. To award attorneys fees under such a philosophy and yet leave the plaintiff shouldering the burden of large amounts of out-of-pocket costs incurred would thwart the purpose of the statute, and the section in question must be construed to include the award not only of compensation for time expended, but also a reimbursement of out-of-pocket disbursements necessarily incurred in the prosecution or defense of a case. In any event, Title 35, Section 284, the section referring to damages, makes it clear that the court has, in addition to jurisdiction to award damages, the authority to add to the damage assessment "... interest and costs...." In support of its application for costs and fees, plaintiffs have supplied the court with an itemized and detailed listing of the expenditures claimed as costs and with photocopies of the time records of plaintiffs' firm, in substantiation of the fee claim.

Plaintiffs further remind the court of the complexity and length of the litigation and the resourcefulness and aggressiveness of the defense. Plaintiffs point further to the "lodestar" theory of the determination of fees which gives the court the discretion, after having determined the "lodestar," that is, the fee reasonable for the services performed in the circumstance, to adjust that figure upwards or downwards, depending on a variety of factors such as the quality of representation, success achieved, etc.

■ The lodestar concept is one that is most often used in the determination of fees for counsel for plaintiffs who have been successful in a class action and will have fees awarded out of the fruits of their endeavor. The contingency aspect of the fee claim is a factor. The concept is not deemed applicable here. It is the intention of the court to determine the reasonableness of the claimed attorneys fees by judging the appropriateness of the hourly rates and the number of hours charged to the pursuit of the litigation. Both the reasonableness of the hourly rates and the reasonableness of the amounts of time expended vis-a-vis the issues and complexity of the case will be considered. The court will recognize further that there is a difference, though a subtle one, between the fee claim of a defendant hailed unconscionably into court to defend itself and a plaintiff, as in this case, forced to file a declaratory judgment action in order to establish the validity of a patent and to bar its infringement. The difference in approach as between these two types of cases is real, although the effect on the ultimate determination of the fee will not be unduly significant.

Addressing first the issue of costs, defendants object that plaintiffs have not complied with the requirements of 28 U.S.C. Section 1924, requiring verification of a bill of costs before costs may be taxed. Plaintiffs have corrected this omission with a subsequent affidavit, and the requirements of that section are now deemed satisfied.

■ Defendants further challenge plaintiffs' application for costs with the argument that deposition costs are taxable only if the depositions are shown to be reasonably necessary to the case and that both depositions and other expenditures of time and costs related to the Aqua-Chem issues in the case are not properly chargeable by virtue of the dismissal of Aqua-Chem at the outset of the litigation. The same argument is made as to costs and other expenditures incurred in connection with the aspects of the case involving Robert Kalnitz, dismissed from the case by the court. The court agrees with these contentions.

These and other much less monetarily significant objections of defendant to the plaintiffs' claim for costs require a reduction of the plaintiffs' cost claim in the amount of $3,158.66. The court does not accept defendants' contention that travel expenses in connection with the taking of out-of-town depositions are not taxable costs.

■ The court turns to the allegation of defendants' attack upon plaintiffs' application for costs, to the effect that the record contains an admission of the loss of billing records at plaintiffs' law firm for the year 1983 and for the period May, 1985 through January, 1986, and attacks the substitute basis for calculation of these expenditures adopted by the plaintiffs, that is the reliance upon bills submitted to the client. The court has a statement from plaintiffs' counsel that the bills submitted to the client have, at this state of the proceedings, been paid. The court will accept these bills as a reliable indicia of attorneys fees in lieu of the lost time records, and the loss on the part of the defendants of an opportunity for detailed examination and analysis of time records will be compensated for as part of an overall reduction of the plaintiffs' claim in an amount estimated by the court to achieve a more equitable assessment of the costs to the defendants of the plaintiffs' reasonable efforts expended in this litigation.

In consideration of the foregoing, it is the decision and judgment of the court that plaintiffs' application for costs in the total amount of $8,213.82 be reduced by the sum of $3,158.66, and costs are therefore awarded to plaintiffs in the amount of $5,055.16.

■ Turning to the fee application, the court accepts as reasonable the hourly rates set forth in the application applied to the time of the various lawyers involved in the litigation. The objection of defendants that legal activity related to the presence in the litigation of Aqua-Chem should not be deemed as appropriately chargeable time is valid, and cognizance will be taken of this issue in the final determination.

■ Finally, the court, in the assessment of an appropriate and reasonable fee award in this case will take into account the inevitable consequence of having a number of attorneys assigned to a single case, that is, the consequence of virtually unpreventable duplication of time and from the helpful point of view of hindsight, the unnecessary attendance of more than one attorney at various junctures in the litigation.

The application of all of these foregoing principles and considerations leads the court to the conclusion that the prayer for attorneys fees in the amount of $244,908.12 must be reduced. No quarter hour by quarter hour analysis of time records or attorney by attorney analysis of billings in this case is possible, given the caseload burdens under which courts labor in these times. It is the equitable instinct of the court in this case which dictates the extent of the appropriate reduction of this request. The court awards, therefore, attorneys fees to prevailing plaintiffs in the amount of $150,000.

■ This opinion turns now to the subject of pre-judgment interest. Plaintiffs have provided the court with a proposed order reflecting the fact that on October 22, 1986, judgment was entered for the plaintiffs in the above-entitled case and that that judgment specifically granted prejudgment interest. Damages awarded in that decision were in the amount of $1,040,-000, and the interest on this sum should be calculated over a five-year period commencing in 1981. With widely fluctuating interest rates during this five-year period, the ascertainment of the appropriate interest rate is difficult. Plaintiffs have attempted to compensate for this fluctuation by a table assessing the interest rate, at one point over prime rate, year by year with the principal sum to which this interest is applied being spread in a complex formula over the years. Defendants understandably object. Among other things, defendants argue that the results achieved by plaintiffs in their interest calculation is the sum of $628,900 awarded to plaintiffs in interest over five years on a $520,000 judgment. Defendants further argue that the base amount to which the interest should be applied is not $520,000 but $420,000, since the court's findings and conclusions recited $420,000 awarded in damages to compensate for lost profits and an additional $100,000 to compensate for lost marketing opportunities. Defendants argue that 35 U.S.C. Section 284 provides only for interest on patent infringement damages, that is, the $420,000 figure. It is true that this is the import of this section, but it is not true that it therefore implies that there is a limitation on the court's ability to award pre-judgment interest for the balance of the judgment.

■ The court will therefore award prejudgment interest on the sum of $520,000 over the five-year period which embraces the activities of defendants in violation of plaintiffs' rights. Losses to the plaintiffs accumulated over the five years and were not totally present over each year of the entire period. The spread of the $520,000 over a five-year period to utilize a formula approximating a just result in this case would result in a principal of $104,000 for the first $208,000 for the second year, etc. Applying the prime rate plus one percent in the plaintiffs' table to each of those years cumulatively results in the figure of $221,-102.

■ In addition to the authority afforded in the patent statute, the court has authority generally to award pre-judgment interest. See *Bricklayers' Pension Trust Fund v. Taiariol*, 671 F.2d 988 (6th Cir. 1982). The calculation of the court in accordance with the above-described formula appears in tabular form as follows:

| | Principal Sum | Interest Rate | Interest for Year |
|---|---|---|---|
| 1981 | $104,000 | 16.75% | $17,420 |
| 1982 | $208,000 | 12.5% | $26,000 |
| 1983 | $312,000 | 12.0% | $37,440 |
| 1984 | $416,000 | 11.5% | $47,840 |
| 1985 | $520,000 | 10.5% | $54,600 |
| 1986 | $520,000 | 8.5% | $37,802* |

* Computed as of October 22, 1986

In accordance with the calculations above, the pre-judgment interest awarded plaintiffs is the sum of $221,102.

The court turns finally to the motion of Robert B. Kalnitz under Rule 11 of the Federal Rules of Civil Procedure. It is Mr. Kalnitz's contention that presentation of the plaintiffs' case demonstrated the total lack of evidence of infringement by defendant Kalnitz, and that this court's dismissal of all claims by the three plaintiffs against Kalnitz at the close of the plaintiffs' case confirms this contention. Kalnitz requests that the plaintiffs be directed to pay his reasonable attorneys fees.

Plaintiffs respond that, in reaction to allusions to Rule 11 by defendant's attorneys before the court, they filed with the court on June 21, 1985 a "... memorandum of law, requirements of Rule 11 ..." which they append to their response to the Kalnitz motion for Rule 11 sanctions and which Kalnitz argues was a pleading not required by the court, the filing of which was in the form of an admission of concern of plaintiffs for their Rule 11 liability. It is the essence of defendant Kalnitz's argument that plaintiffs, in naming him as a defendant in a suit on four patents, adopted a position inherently contradictory in that plaintiffs' position evidenced before the litigation and in the course of answering interrogatory No. 2, made it clear that the plaintiffs, in their licensing agreement with Aqua-Chem, limited that agreement to triiodide-impregnated resins and to rights under patents No. '860 and '665. By contrast, the '183 and '529 patents include polyiodides and could not have been infringed by Kalnitz. Kalnitz adds that an analysis of the resins prior to the filing of the lawsuit would have revealed the inappropriateness of including Kalnitz as a defendant.

Plaintiffs rely on the right of litigants to file inconsistent pleadings, which the court recognized in an earlier opinion. Defendant responds that, in this case, an answer to an interrogatory is also involved and that the inherent conflict in plaintiffs' inconsistent positions demonstrates that suit on two of the patents at least was not well grounded in fact, a circumstance which plaintiffs knew or should have known. Defendant Kalnitz argues further that, although Calco was a defendant and Calco

has been found guilty of misconduct here, he, in his individual capacity, was not engaged in misconduct and that no deposition, discovery or other evidence before the trial indicated that he was.

Plaintiffs respond that the trial evidence and exhibits demonstrate an adequate investigation of infringement prior to the filing of the lawsuit and an adequate factual basis for the conclusions expressed in the original complaint. The court agrees that a reasonable basis for the conclusion that infringement had occurred was present at the time of the filing of the complaint, as demonstrated by the evidence produced thereafter. The court agrees with plaintiffs that the argument that Kalnitz as an individual might be separated from the activities of the corporation which he controlled, as was obviously the result achieved at the conclusion of the plaintiffs' case, is not a bar to the inclusion of him as an individual defendant in the case when there is belief, later supported by some evidence, that he had individually acted in a manner contributing to the infringement. Whether he was found individually liable for infringement does not derogate from plaintiffs' claim that they had a basis for believing at the institution of the lawsuit that he could have been so found. Plaintiffs further point out that the complaint was filed under the old Rule 11, in which the pleading requirement imposed upon counsel was that of "... good faith ...," as distinguished from the somewhat more stringent standards of the new rule, not applicable in this case.

It is the conclusion of the court that conduct of plaintiffs and plaintiffs' counsel in the inclusion of Robert Kalnitz as a defendant in this case was reasonable under the circumstances known to counsel at the time and, under the rule applicable at that time, was not a demonstration of bad faith such as to justify the imposition of sanctions, and the motion of Robert Kalnitz for Rule 11 sanctions is therefore denied.

It is the belief and understanding of the court that all outstanding post-trial motions in this case are addressed by and have been

---

---

adjudicated in this memorandum opinion, and the summary of the rulings is as follows.

Petition of plaintiffs for costs and attorneys fees is granted in the amounts of $5,055.16 for costs and $150,000 for attorneys fees. Petition of plaintiffs for prejudgment interest is granted in the amount of $221,102. The motions of defendants Calco and Gartner to alter or amend the judgment of October 22, 1986 is denied. The motion of defendant Robert Kalnitz for Rule 11 sanctions against plaintiffs is denied.