**WATER TECHNOLOGIES CORPORATION, Water Pollution Control Systems, Inc. and Kansas State University Research Foundation, Plaintiffs,**

v.

**CALCO LTD. and William J. Gartner, Defendants.**

No. 82 C 4330.

United States District Court, N.D. Illinois, E.D.

March 14, 1989.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

In this opinion, we consider the request for attorneys' fees by the plaintiffs Water Technologies Corp., Water Pollution Control Systems, Inc. and Kansas State University Research Foundation (collectively "WTC"). For the reasons set forth below, we award attorneys' fees in the amount of $184,537 and prejudgment and post-judgment interest of $66,751, for a total of $251,288.

### I. Background

This case has a rather involved procedural history, which we will only summarize here. (A more detailed summary may be found in our earlier opinion in this case. *See* Jan. 24, 1989 Op. at 2–7.) Two of the present plaintiffs, Water Technologies and Water Pollution Control, brought this suit in July 1982 against the two present defendants Calco, Ltd. and William J. Gartner (collectively "Calco") and another defendant, since dismissed. The suit also named Aqua–Chem, Inc. ("Aqua–Chem") as an involuntary plaintiff and cross-defendant. After discovery and various settlement agreements, the case became realigned in the way it now stands. At trial, former Chief Judge Frank J. McGarr found that Calco was liable for the willful infringement of WTC's four patents and for unfair competition and that WTC merited attorneys' fees under 35 U.S.C. § 285 (1982). *See* 658 F.Supp. 961 (N.D.Ill.1986); 658 F.Supp. 980 (N.D.Ill.1987). However, Judge McGarr reduced WTC's request for fees from approximately $245,000 to $150,000, in part because WTC's law firm had lost certain billing records and in part be-

cause of his "equitable instinct" about the case.

On appeal, the Federal Circuit affirmed the finding of willful infringement but reversed on the question of unfair competition and held that Judge McGarr had used the incorrect method for determining damages. 850 F.2d 660 (Fed.Cir.), *cert. denied,* — U.S. ——, 109 S.Ct. 498, 102 L.Ed.2d 534 (1988). In addition, the Federal Circuit held that although attorneys' fees were proper, Judge McGarr's equitable instinct was an inadequate basis for setting the award. Accordingly, the court remanded the case to us for the redetermination of damages, prejudgment interest and attorneys' fees. Calco petitioned the United States Supreme Court for a writ of certiorari, which was denied on November 28, 1988. — U.S. ——, 109 S.Ct. 498, 102 L.Ed.2d 534 (1988).

In a previous opinion, dated January 24, 1989, we awarded $417,976 in damages and $115,141 in prejudgment interest, for a total of $533,117. In addition, we concluded that WTC was entitled to prejudgment and postjudgment interest on any attorneys' fee award but not entitled to fees for legal work done on appeal or on remand. Jan. 14, 1989 Op. at 20–23. We did not make a final determination of damages, however, because WTC had presented its lodestar document in a rather unwieldy form. Accordingly, we directed WTC to provide a summary of its request. WTC has done so, Calco has responded, and we are now ready to rule.[1]

## II. Availability of Fees on Appeal and on Remand

WTC has first asked us to reconsider our decision that it is not entitled to fees for appeal or for remand. We based our earlier decision on *Rohm & Haas Co. v. Crystal Chemical Co.,* 736 F.2d 688 (1984), which held that 35 U.S.C. § 285 (1982) allows attorneys' fees for appeals only if the appeal is itself "exceptional." WTC disagrees with our interpretation of *Rohm & Haas* but seems to have ignored the plain language of the court: "We construe the language of § 285 as applicable to cases in which the appeal itself is exceptional." *Id.* at 692. The other cases relied on by WTC are inapposite; they either involve fees statutes other than section 285 or predate *Rohm & Haas.* Upon reconsideration, therefore, we conclude our previous holding is still correct.

## III. The Adequacy of Documentation

Calco complains that WTC has inadequately documented its request for fees, inasmuch as it failed "to detail the time spent on each particular task by an attorney on a given day, the task undertaken by that attorney, and the date on which that task was done." Defendant's Feb. 10, 1989 Reply at 2. Because of these shortcomings, Calco claims, we must give little weight to WTC's fee request and reduce the fee award substantially.

As support for this proposition, Calco cites to Judge William T. Hart's decision in *Procter & Gamble Co. v. Weyerhaeuser Co.,* No. 81 C 1221, 1989 WL 4198, 1989 U.S.Dist. Lexis 430 (N.D.Ill. Jan. 12, 1989). In *Procter & Gamble,* Judge Hart substantially reduced a request for attorneys' fees, in large part because of what he perceived as inadequate documentation. The material presented, Judge Hart complained, "does not show exactly what any attorney did on any date." *Id.* at 3. Relying on this language, Calco contends that without such a day-to-day accounting, we should follow Judge Hart's lead and materially reduce WTC's fee request.

We decline the invitation. In our view, controlling case law does not require Judge Hart's rather rigorous standard, and prudence counsels against it. Clearly, "there must be some evidence to support the reasonableness of, *inter alia,* the billing rate charged and the number of hours expended," *Lam, Inc. v. Johns–Manville Corp.,* 718 F.2d 1056, 1068 (Fed.Cir.1983), but as the Federal Circuit explained in remanding this case, "the 'issue of reasonable fees

---

**1.** Calco has also submitted a motion to strike a reply filed by WTC. Because Calco considered new material in its response, it would be unfair not to allow WTC to reply, so the motion is denied.

should be settled in the most expeditious manner possible.' " 850 F.2d at 674 (*quoting Monolith Portland Midwest Co. v. Kaiser Aluminum & Chemical Corp.*, 407 F.2d 288, 298 (9th Cir.1969)). Requiring a day-by-day accounting would only slow the process and entail a time consuming review of many documents, with no appreciable improvement in result. We think the monthly billing summaries, along with the yearly summaries that we requested, adequately categorize the billing materials.

■ Yet even if a day-to-day accounting were necessary, WTC has provided it in the form of its billing records.[2] One of these records (No. 76), taken at random, tells us that R.A. Dunn worked on a "Letter to Leland L. Davis re Revised Second Set of Interrogatories" for one-half hour on January 3, 1984, and on a response to the interrogatories for 7¾ hours on January 18 and 19. Of course, these billing records are rather voluminous, and we do not intend to work our way through them. But if Calco wants day-to-day information, that information is there. We will, as we describe below, reduce WTC's fee award, but not because the documentation is inadequate.

## IV. Deductions

In the years 1982 through 1986, WTC incurred attorneys' fees and expenses in the amount of $250,060.[3] WTC concedes that deductions in the amount of $37,830 are necessary, and so requests an award of $212,230, exclusive of interest. Not surprisingly, Calco claims that the deductions should be much greater. We consider each of the deductions in turn.

### A. *Reasonableness of Hourly Rates*

■ Calco contends that Michael R. Dinnin, lead counsel for WTC in this litigation, charged an excessive hourly rate. Mr. Dinnin, who has more than twenty years of litigation experience, charged from $116.50 an hour in 1982 to $178 an hour in 1986, which WTC claims is reasonable and Calco complains is not. Both sides rely on 1985 and 1987 studies by the American Intellectual Property Law Association ("AILPA"), which compare hourly rates in various cities for litigating partners. However, they disagree which city's rates should be used. Calco argues that Detroit should be used, since Dinnin's firm is in Birmingham, Michigan. If Detroit is used, Dinnin's 1985 rate, $162, exceeds the 1985 figure for the 75th percentile for litigating partners, $133, and his 1986 rate, $178, exceeds the 1987 figure for the 75th percentile, $152. WTC, on the other hand, argues that Chicago should be used, since the trial was here. If Chicago is used, his 1985 rate, $162, just barely exceeds the 1985 figure for the 75th percentile, $161, and his 1985 rate, $178, just exceeds the 1987 figure, $176.

We agree with WTC that the Chicago figures should be used and conclude that the fees Dinnin charged were reasonable. We have three reasons. First, we note that Judge McGarr previously held that the hourly rates charged were reasonable, 658 F.Supp. at 984, and the Federal Circuit did not disagree with this conclusion, *see* 850 F.2d at 674. Second, we believe that Chicago should be the basis for any comparison, since the litigation was here. *Cf. In re Folding Carton Antitrust Litigation*, 84 F.R.D. 245, 265 (N.D.Ill.1979). Third, Dinnin's twenty plus years of experience must be taken into account. The 1987 AIPLA survey indicated that the hourly rate for the 75th percentile of partners nationwide who had twenty years of experience was $201 an hour. In light of this, we conclude Dinnin's rates were reasonable.[4]

### B. *Fees Attributable to Aqua–Chem*

■ Both sides agree that time spent by WTC's attorneys on matters related to Aqua–Chem's presence in the suit must be deducted from the fee award, but they

---

**2.** We previously criticized WTC for providing an undifferentiated mass of documents, but in light of Calco's subsequent arguments, perhaps such extensive documentation was warranted after all.

**3.** All figures are rounded to the nearest dollar.

**4.** Calco does not challenge the rates charged by the other attorneys or by law clerks.

disagree on how much of a deduction this entails. Calco notes that half of the docket entries from the time the suit was brought until WTC and Aqua–Chem settled involved Aqua–Chem and argues that 50% of the fees incurred in that time, $51,130, should be deducted. WTC argues, based on its billing records, that only $37,180 should be deducted. We conclude that WTC's figure is the more reasonable. Much of the time spent would have been spent even if Aqua–Chem had never been part of the suit, so a 50% reduction seems excessive. Accordingly, we will deduct $37,180 in fees attributable to Aqua–Chem.

### C. Fees Attributable to the Unfair Competition Claim

■ The parties also agree that some amount must be deducted for the unfair competition claim reversed by the Federal Circuit, but they have widely divergent views on just how much. WTC contends that a mere $650 should be deducted, based on ten hours that an associate spent in preparing a memorandum on the subject. We cannot accept such a low figure. Undoubtedly, much of the discovery and other work done on the unfair competition claim overlapped with the patent infringement claim, but ten hours is less than one-half percent of the over two thousand hours spent before this case was appealed. We do not believe that the overlap was that complete. Therefore, we will deduct five percent or $12,503 from the total award.

### D. Duplication

WTC has conceded that there was some unavoidable duplication of time and has admitted that $14,195 should be deducted for the years 1982–1986.

### E. Local Counsel

■ Calco argues that WTC's Chicago counsel William A. Van Santen billed an excessive number of hours for someone who did little more than attend motion calls and file papers. Mr. Van Santen is known to this Court as an attorney of ability and integrity. Nevertheless, it is unfortunately difficult to tell from the materials WTC has presented exactly what Van Santen's duties were. Because the burden is on WTC to show that its fee request is reasonable and because WTC has failed to rebut in its entirety Calco's excessive fee argument, we will deduct $1,645—10% of the $16,453 charged by Van Santen—from the fee.

### F. Unpaid Bills

■ Calco's final argument is based on the fact that WTC still owes its law firm about $50,000. Calco contends that because this amount has not been paid, its reasonableness cannot be presumed, and we should deduct the entire amount from the fee award. No support is offered for this proposition, which is put forth in a single sentence buried at the end of another argument, and our research uncovered none. Moreover, we think it is reasonable for a law firm to allow a valued client to keep an unpaid balance, and we see no reason to penalize WTC for this.

### G. Totals

■ Based on the foregoing, we award a total of $184,537, exclusive of interest.

| | |
|---|---|
| Expenses Incurred | $250,060 |
| Minus Fees for Aqua–Chem | – 37,180 |
| Minus Fees for Unfair Competition | – 12,503 |
| Minus Duplication | – 14,195 |
| Minus Local Counsel | – 1,645 |
| | $184,537 |

### V. Prejudgment and Postjudgment Interest

■ As noted above, WTC admits that it still owes its law firm about $50,000. Calco also contends that WTC was "dilatory" in fees that it owed during 1986. Since interest is awarded to put a plaintiff in the same position he or she would have enjoyed if he did not pay fees and since WTC did not pay all its fees on time, Calco argues our prejudgment and postjudgment interest award should be reduced. In light of our "inherent equitable power" to determine the "compensatory question of award [under section 285] ... and the rate of

prejudgment interest," *Mathis v. Spears*, 857 F.2d 749, 754 (Fed.Cir.1988), we think a deduction in interest is in order for 1986; accordingly, we will deduct 35% of the interest for that year. On the other hand, a deduction for postjudgment interest for 1986 and 1987 is inappropriate. The source of our power to award postjudgment interest is not section 285, but rather 28 U.S.C. § 1961(a) (1982), which provides, "Interest shall be allowed on any money judgment in a civil case recovered in a district court." Any money judgment, in this context, includes an award of attorneys' fees. *See Mathis*, 857 F.2d at 760. As we suggested in our earlier opinion, Jan. 24, 1989 Op. at 23, the categorical language of section 1961(a) leaves us no discretion, and Calco has provided no authority to make us think otherwise.

We set out the award of interest on attorneys' fees in the table below. Three things should be noted about the table. First, the parties agree on the inter-est rates, which are the same rates we used to determine prejudgment interest on the damages award. Second, the various deductions are deducted pro rata from the attorneys' fees and expenses incurred each year. Third, as we did with the damages award, we calculate interest on the "average principal balance," which is the sum of the "principal sum" for the previous year, plus one half of the net fees incurred in the given year. For example, the average principal balance for 1985 is the principal sum from 1984 ($68,309) plus one-half of the net fees incurred for 1985 (.5 × $93,964 = $46,982) for a total of $115,291. This accounts for two facts. First, WTC would have already paid out all of the attorneys' fees for 1984 by 1985. Second, at any given time during 1985, WTC would have paid out an average of about half of the fees incurred in that year.

Applying this methodology, we came up with a prejudgment and postjudgment interest award of $66,751.

| | Fees and Expenses Incurred | Pro Rata Deduction | Net Fees Incurred | Principal Sum | Average Principal Balance | Interest Rate | Interest |
|---|---|---|---|---|---|---|---|
| 1982 | $ 20,519 | $ 5,377 | $15,142 | $ 15,142 | $ 7,571 | 12.5% | $ 946 |
| 1983 | 28,158 | 7,378 | 20,780 | 35,922 | 25,532 | 12.0% | 3,064 |
| 1984 | 43,886 | 11,499 | 32,387 | 68,309 | 52,116 | 11.5% | 5,993 |
| 1985 | 127,328 | 33,364 | 93,964 | 162,273 | 115,291 | 10.5% | 12,106 |
| 1986 | 30,169 | 7,905 | 22,264 | 184,537 | 173,405 | 8.5% | 14,739 |
| 1987 | — | — | — | 184,537 | 184,537 | 9.0% | 16,608 |
| 1988 | — | — | — | 184,537 | 184,537 | 10.0% | 18,454 |
| | | | | | Total Interest | | $71,910 |
| | | | | | —35% of 1986 Interest | | — 5,159 |
| | | | | | Total Award | Interest | $66,751 |

## VI. Conclusion

For the reasons set forth above, we award WTC $184,537 in attorneys' fees and $66,751 in prejudgment and postjudgment interest, for a total of $251,288. It is so ordered.