**Randolph M. HOWES, Janice Kinchen Howes, and Arrow International, Inc.**

v.

**MEDICAL COMPONENTS, INC., and American Hospital Supply Corp.**

Civ. A. No. 84-4435.

United States District Court, E.D. Pennsylvania.

Dec. 14, 1990.

Albert E. Fey, New York City and Richard F. McMenamin, Philadelphia, Pa., for plaintiff.

William H. Eilberg, Jenkintown, Pa., for Medical Comp.

John W. Chestnut, Chicago, Ill., for American Hosp. Supply.

## MEMORANDUM AND ORDER

HUYETT, District Judge.

This is a patent infringement action. On April 13, 1990, a jury found defendants liable for willful infringement of the patents in suit. By an order dated on May 22, 1990, I found that this was an "exceptional case" under 35 U.S.C. § 285 and granted plaintiffs' motion for attorney fees.[1]

Pursuant to paragraphs 16 and 17 of the Final Judgment and Injunction dated on June 8, 1990, plaintiffs filed their petition for attorney fees and defendants filed their objections. On Wednesday, October 31, 1990, I held oral argument in open court on plaintiffs' petition for attorney fees and rendered a bench opinion granting in part and denying in part plaintiffs' petition.

This memorandum shall supplement my bench opinion rendered on October 31, 1990.

Pursuant to 35 U.S.C. § 285, plaintiffs submitted a petition for attorney fees, costs, and expenses in the amount of $2,037,935.77. In support of that petition, plaintiffs have submitted four affidavits plus supporting exhibits: (1) Affidavit of Albert E. Fey from Fish & Neave; (2) Affidavit of Richard F. McMenamin from Morgan, Lewis & Bockius; (3) Affidavit of Charles H. Lindrooth from Synnestvedt & Lechner; and (4) Affidavit Richard H. Smith from Finnegan, Henderson, Farabow, Garrett & Dunner.

Defendants raise approximately nine objections to plaintiffs' petition for attorney fees. I shall discuss each of their objections seriatim.

---

**1.** Section 285 of Title 35 of the United States Code provides:

The court in exceptional cases may award reasonable attorney fees to the prevailing party.

## I. *Reasonable Hourly Rate*

In *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), the United States Supreme Court provided the following general guidelines to courts for determining the amount of a reasonable fee:

> The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services. The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly.

> The district court also should exclude from this initial fee calculation hours that were not "reasonably expended." ... Cases may be overstaffed, and the skill and experience of lawyers vary widely. Counsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission.

*Id.* at 433–34, 103 S.Ct. at 1939–40. The Federal Circuit in *Devine v. Sutermeister,* 733 F.2d 892 (Fed.Cir.1984), recognized the applicability of *Hensley* to any case "in which Congress has authorized the award of fees to a 'prevailing party'." *Id.* at 897 n. 4.

Although the amount of an award of attorney fees is assessed at the discretion of the district court, the court when determining such an award should keep in mind the philosophy underlying section 285:

> The purpose of § 285 is, in a proper case and in the discretion of the trial judge, to compensate the prevailing party for its monetary outlays in the prosecution or defense of the suit.

*Central Soya Co. v. Geo. A. Hormel & Co.,* 723 F.2d 1573, 1578 (Fed.Cir.1983).

Generally, a reasonable rate corresponds to the prevailing market rates in the relevant community. *Blum v. Stenson,* 465 U.S. 886, 895, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984). Defendants contend that the relevant community in the present case is the area where the litigation took place—i.e. the Philadelphia area, and, therefore, that the rates submitted by plaintiffs must be reasonable when compared to the rates of patent attorneys in the Philadelphia area. *See Water Technologies Corp. v. Calco Ltd.,* 709 F.Supp. 821, 824 (N.D.Ill.1989).

Some courts have allowed rates comparable to those prevailing at an attorney's business location, but have done so only if the plaintiff has a good reason for using non-local counsel. *See, e.g., National Gypsum Co. v. Steel Systems Int'l, Inc.,* 9 U.S.P.Q.2d 2073, 2075, 1988 WL 135780 (D.Or.1988); *Playboy Enter., Inc. v. P.K. Sorren Export Co., Inc. of Florida,* 221 U.S.P.Q. 124, 126, 1983 WL 178 (S.D.Fla. 1983).

In the present case, I am satisfied that the relevant community for determination of reasonable hourly rates for Fish & Neave is New York City. When the possibility of litigation arose, both Dr. Howes' patent counsel in Washington, D.C. and Arrow's patent counsel in Philadelphia suggested to their respective client the New York City law firm of Fish & Neave and, in particular, attorney Albert E. Fey.

Fish & Neave, located in New York City, has been in existence for over one hundred years. The firm currently consists of approximately 102 attorneys. Thirty-one of the attorneys are partners and approximately 71 attorneys are associates. Fish & Neave specializes in complex litigation, and in particular, litigation of patent, trademark, unfair competition, and related cases conducted in Federal Courts throughout the country. Many of the cases handled by Fish & Neave are comparable in size and complexity to cases handled by the litigation departments of much larger New York City law firms. *See* Affidavit of Albert E. Fey at ¶ 14.

I believe that a party should be entitled to retain the most competent counsel available, particularly in the highly specialized area of complex patent litigation and particularly when its local counsel suggests using an out-of-state law firm for the purpose of litigation. Therefore, because I conclude that plaintiffs had a good reason for using non-local counsel, plaintiffs' New York City counsel are entitled to recover the reasonable hourly rate for the New York City community.

Defendants also contend that, even if this court determines that Fish & Neave is entitled to the rate of pay that was standard in New York City during the relevant time periods, the rates requested by Fish & Neave are still unreasonable.

In *Cunningham v. City of McKeesport*, 753 F.2d 262 (3d Cir.1985), *vacated on other grounds*, 478 U.S. 1015, 106 S.Ct. 3324, 92 L.Ed.2d 731 (1986), the court held that reasonable attorney fees are generally determined by the attorney's normal billing rate:

> In the seminal *Lindy I* opinion [*Lindy Bros. Bldrs., Inc. of Phila. v. Am. R. & S. San. Corp.*, 487 F.2d 161 (3d Cir. 1973) ], this court held that the value of an attorney's time is generally reflected in his normal billing rate. Our premise was then, and still is, that the reasonable value of an attorney's time is the price that time normally commands in the marketplace for legal services in which those services are offered.

*Id.* at 267.

■ This case began in 1984. The range of hourly billing rates from 1984 until 1990 for Fish & Neave personnel who worked on this matter is as follows:

| | |
|---|---|
| Partners | 170–370 |
| Associates | 70–230 |
| Paralegals | 45–85 |

In order to assess the reasonableness of the Fish & Neave billing rates from 1984 until 1990, it is instructive to look at the billing rates of those attorneys most active in this case. Turning first to partners' rates, Mr. Fey's billing rate ranged from between $230 in 1984 to $370 in 1990. Mr. Morgan's billing rate ranged from between $190 in 1984 to $260 in 1987. Mr. Ousterhout became a partner in 1989. His billing rates ranged from $170 in 1987 as an associate to $250 in 1990 as a partner. Ms. Loring, an associate, was billed at a rate of between $80 in 1985 to $230 in 1990.

Fish & Neave's rates compare favorably with other New York City firms which handle complex litigation. For example, in 1989, Sherman and Sterling billed top associates at a rate of $250 per hour and top partners at $350 per hour; Willkie Farr & Gallagher billed senior associates at $250 per hour and top partners at up to $400 per hour; Milbank, Tweed, Hadley & McCloy billed top partners at $375 per hour; Proskauer Rose Goetz & Mendelson billed top associates at $225 per hour and partners at up to $365 per hour; Hughs, Hubbard & Reed billed its top partner at $370 per hour. *See* Exhibit 54 to the Affidavit of Albert E. Fey.

A November 1989 article appearing in the *National Law Journal* lists associates' hourly rates at Proskauer Rose Goetz & Mendelson at up to $245 per hour and partners at up to $365 per hour; Brown & Wood bills associates at up to $215 per hour and partners at up to $400 per hour; Kenyon and Kenyon, a patent firm of 93 lawyers, bills associates at up to $195 per hour and partners at up to $330 per hour; Lord Day & Lord, Barret Smith bills associates at up to $210 per hour and partners at up to $400 per hour; Rosenman & Colin bills associates at up to $245 per hour and partners at up to $400 per hour; and Weil, Gotshal & Manges, which represents clients in patent infringement and other intellectual property litigation, bills associates at up to $235 per hour and partners at up to $375 per hour.

A 1987 American Intellectual Property Law Association ("AIPLA") survey, reporting on 1986 rates, broke the rates down into those of partners and associates in intellectual property firms. According to this survey, twenty-five percent of partners in private firms in New York City had hourly billing rates higher than $219 per hour, while twenty-five percent of associates in private firms in New York City had

billing rates higher than $148 per hour. *See* Exhibit 54 to the Affidavit of Albert E. Fey.

The 1989 AIPLA survey revealed that, by 1988, twenty-five percent of partners in private firms specializing in intellectual property in New York City had billing rates higher than $247 and twenty-five percent of associates had hourly rates higher than $163. *See* Exhibit 54 to the Affidavit of Albert E. Fey.

Although the rates charged by Fish & Neave attorneys involved in this litigation between 1986 and 1988 were, for the most part, higher than the highest rates shown in the AIPLA' surveys, their rates are reasonable when compared to other New York City firms that handle complex litigation. I am not aware of any legal authority that provides that, because this is a patent infringement action, I must limit my reasonableness analysis to a comparison of hourly rates at firms specializing in intellectual property law. Therefore, I am satisfied that the rates charged by Fish & Neave are reasonable hourly rates when compared with other New York City firms which handle complex litigation. The hourly rates are also reasonable in light of the skill, experience, and expertise of the Fish & Neave attorneys, particularly Mr. Fey who has over 30 years of experience.

## II. *Number of Hours Reasonably Expended*

Defendants also contend that the number of hours that plaintiffs' attorneys billed is unreasonable.

A. First defendants contend that the method by which Fish & Neave allocated charges between this action and another related action is arbitrary and cannot discharge plaintiffs' burden of proof. Therefore, defendants request that I award plaintiffs only those fees and disbursements which plaintiffs can actually prove that they incurred with respect to this action.

█ As Mr. Fey explains in his affidavit in paragraph 8, Exhibits 1–6 to his affidavit comprise statements covering the earliest phase of two related matters—*Arrow v. Medical Components Inc.* (the AHS matter) and *Arrow v. Cook* (the Cook matter) filed in the Southern District of Indiana. Before the AHS and Cook matters were filed as individual lawsuits, and for a short time thereafter, Fish & Neave assigned all fees and disbursements pertaining to those matters to one billing category called the "Catheter Matter." Mr. Fey states that fees and itemized disbursements pertaining solely to the AHS matter have been allocated to this attorney fee petition and those pertaining solely to the Cook matter have been excluded from this petition. Mr. Fey explains that in those instances where attorney fees were related to both matters, 50 percent of those fees were allocated to this petition. With respect to disbursements attributable to the AHS matter, other than those specifically relating to AHS, Mr. Fey explains that Fish & Neave allocated the disbursements in Exhibits 1–6 in proportion to the percentage of total fees billed to plaintiffs in Exhibits 1–6 for the AHS matter. According to Fish & Neave's calculations, the total fee attributable to the AHS matter in Exhibits 1–6 is $48,509.83, which represents about 65% of the total fees billed to plaintiffs in those exhibits for both the AHS and Cook matters.

I am impressed with the precision with which these computations were made. I conclude that the method of allocating attorney fees and disbursements not identified specifically to the AHS matter is reasonable, and not totally arbitrary as defendants suggest.

B. Second, defendants contend that this attorney fee petition is unreasonable because it includes the fees of plaintiffs' other patent counsel and because plaintiffs fail to provide any explanation for the necessity of the services provided by the law firms of Synnestvedt & Lechner, and Finnegan, Henderson, Farabow, Garrett & Dunner.

The four law firms involved in this action were: (1) Fish & Neave from New York; (2) Morgan, Lewis & Bockius from Philadelphia; (3) Synnestvedt & Lechner in Philadelphia; and (4) Finnegan, Henderson, Farabow, Garrett & Dunner in Washing-

ton, D.C. Partners from each of the above law firms submitted affidavits with attached exhibits in support of this attorney fee petition.

1. *Morgan, Lewis & Bockius:* Affidavit submitted by Richard F. McMenamin.

Fish & Neave retained the law firm of Morgan, Lewis & Bockius to act as its local counsel in this matter. As Mr. McMenamin explains in paragraph 4 of his affidavit, the responsibilities of Morgan, Lewis & Bockius have included: providing advice on local Court rules and practice; reviewing, filing, and serving of plaintiffs' submissions; reviewing of defendants' submissions; reviewing of Court correspondence, Orders, and Judgments; scheduling of Court appearances; attendance at preliminary pretrial and pretrial conferences; and preparation and review of correspondence.

The total amount of compensation sought by plaintiffs for the services of Morgan Lewis is $26,068.07. This amount includes $24,425.50 for professional services and $1,642.57 for disbursements.

Defendants do *not* object to the fees requested for the services performed by Morgan, Lewis & Bockius from Philadelphia. Furthermore, I conclude that the fees charged by Morgan Lewis are reasonable in every respect, and I shall permit these fees to be recovered.

2. *Synnestvedt & Lechner:* Affidavit submitted by Charles H. Lindrooth.

From reading Mr. Lindrooth's affidavit it appears that the law firm of Synnestvedt & Lechner is the law firm in Philadelphia that handles Arrow's legal work relating to patents. When litigation came into the picture, the law firm of Fish & Neave was retained. Because of Synnestvedt's knowledge of Arrow and its operations, it assisted Fish & Neave in its preparation for the trial of this action.

The total amount billed to Arrow for services rendered by Synnestvedt & Lechner in assisting Fish & Neave in its preparation for the trial of this action is $36,466. The total amount billed for disbursements incurred in the rendering of these services is $2,925.35.

It is *not* clear from the evidence submitted that the services of Synnestvedt & Lechner were necessary and not simply a duplication of the services rendered by Fish & Neave. Thus, I conclude that plaintiffs have *not* met their burden of proving that the services rendered by this Philadelphia firm were reasonably expended in this litigation, and I shall not permit recovery of these fees and disbursements totalling $39,391.35.

3. *Finnegan, Henderson, Farabow, Garrett & Dunner:* Affidavit submitted by Richard H. Smith.

The law firm of Finnegan, Henderson, Farabow, Garrett & Dunner was retained by Dr. Howes in 1984 to represent him in patent matters and, in particular, the prosecution in the U.S. Patent and Trademark Office ("P.T.O.") of the application for reissue of his U.S. patent 4,071,146 (now reissue patent No. 31,873) and the prosecution of the reexamination proceedings conducted in the P.T.O. with respect to such patent as it related to this litigation.

The total amount billed by the Finnegan firm for professional services is $34,239. According to Mr. Smith, $27,605.25 relates specifically to the reexamination proceedings. The total amount billed for disbursements is $3,227.08. According to Mr. Smith, $2,751.56 of the $3,227.08 spent on disbursements relates to the reexamination proceedings.

I conclude that the services rendered by the Finnegan, Henderson, Farabow, Garrett & Dunner firm were reasonably necessary to this litigation, especially considering how important the two reexamination proceedings were to this litigation. Further, I also conclude that fees charged for those services were reasonable.

C. Third, defendants maintain that the attorney fees requested are unreasonable because they include unnecessary duplication of efforts arising out of the large number of attorneys at Fish & Neave who participated in this action. Defendants, however, concede that the duplication of efforts is not apparent from the data submitted by plaintiffs. According to defen-

dants' calculations, three partners and twenty-three associates at Fish & Neave participated in this litigation over the years. Two partners, three associates, and four paralegals at Fish & Neave participated in the preparation of the fee petition. Defendants also assert that more attorneys than necessary attended the depositions, the hearings, and the trial. According to defendants' calculations, two or more plaintiffs' attorneys attended every deposition, and three attorneys attended every day of the trial.

Taking into account that this is a 1984 action (over 6 years old) and that it is a complex patent case, I cannot conclude that the number of people who have been involved in this case over the years is unreasonable. In my opinion, plaintiffs' attorneys presented a most impressive case to the jury. The issues in this complex patent case were difficult, and great skill and experience was required for plaintiffs' counsel to render proper legal services on behalf of plaintiffs. Clearly, Fish & Neave rendered highly competent services at all times. Also, the experience, reputation, special expertise, and ability of the attorneys from Fish & Neave is a factor which must be considered, as well as the superior results achieved by counsel for plaintiffs. I cannot conclude that three attorneys at trial, or two or three attorneys at depositions, is unreasonable or unnecessary duplication. The presence of more than one attorney at a deposition or trial enhances efficiency, as pointed out by plaintiffs' counsel at oral argument. Consequently, I decline to reduce the hours submitted by Fish & Neave and conclude that the number of hours expended on this litigation by Fish & Neave were necessary and, thus, reasonable.

### III. *Fees Requested for Expert Witnesses and Consultants*

Defendants contend that plaintiffs should *not* be awarded fees for expert witnesses because they have not included any documentation in support of those fees, other than the bills submitted by Fish & Neave to their client, Arrow. In addition, defendants maintain that, even if plaintiffs

had produced adequate documentation, this is not a proper case to award fees for expert witnesses and consultants.

In *Mathis v. Spears*, 857 F.2d 749 (Fed. Cir.1988), the Federal Circuit stated that "under section 285, which authorizes an award of fees only upon a finding of 'exceptional case,' a district court may, in the exercise of its discretion and inherent equity power, in a proper case, include an award of reasonable expert witness fees in excess of the $30 per day attendance fee specified in 28 U.S.C. § 1821." *Id.* at 759. However, what is not clear from *Mathis* is the definition of a "proper case." In *Mathis*, the Federal Circuit affirmed the district court's award of expert witness fees, and concluded that it was an exceptional case of vexatious and unwarranted litigation.

In *Beckman Instruments, Inc. v. LKB Produkter AB*, 892 F.2d 1547 (Fed.Cir. 1989), Federal Circuit reaffirmed that, in light of the decision in *Mathis*, fees and expenses for experts and consultants are awardable under section 285. *Id.* at 1554.

Relying on *Mathis*, defendants contend that a "proper case" for the award of fees and expenses of experts and consultants is a case in which the losing party conducted the litigation in a vexatious or oppressive manner. Defendants contend that their conduct in this action does not support the award of expert witness and consultant fees.

Upon review of the decision in *Mathis*, I conclude that defendants' interpretation of the holding in that case with respect to awarding fees for expert witnesses is unduly narrow, and I decline to adopt such a restrictive interpretation.

■ In the present case, the jury made a specific finding of willful infringement, and I made a specific finding that this case is exceptional under section 285. Considering that this was a jury trial, the use of expert witnesses and a jury consultant was necessary to make the issues easier for the jury to understand. Therefore, I conclude that this is a proper case for the award of reasonable fees for expert witnesses and consultants. Further, I conclude that the

expert witness fees and consultant fees are reasonable in light of the scope and complexity of this litigation.

At oral argument, I determined that defendants' objection with respect to the lack of documentation in support of the fees requested for expert witnesses and consultants had merit and ordered plaintiffs to submit additional documentation to support those fees. As per my order, plaintiffs submitted supplemental documentation. *See* Plaintiffs' Supplement to Plaintiffs' Petition for Attorney Fees. After carefully reviewing that documentation, I found it to be adequate to support plaintiffs' request for fees for their expert witnesses and jury consultant. *See* Order Dated November 5, 1990.

### IV. *Overhead Charges*

██ Fish & Neave's bills include charges for overhead, such as expenses for secretarial time, word processing equipment, and library services. Defendants contend that such bills for overhead charges should *not* be allowed because courts have consistently rejected requests for overhead charges in applications for attorney fees. *See PPG Industries, Inc. v. Celanese Polymer Specialties Co.*, 658 F.Supp. 555, 559 (W.D.Ky.1987); *Trend Products Co. v. Metro Industries Inc.*, 10 U.S.P.Q.2d 1539 (C.D.Cal.1989). Thus, defendants request this court to disallow the overhead charges requested by Fish & Neave. The overhead amounts are summarized on pages 25–28 of Mr. Fey's affidavit.

In *PPG*, a case in which the court was considering another fee petition submitted by Fish & Neave the court stated as follows:

> Celanese [the prevailing party] also seeks to recover $42,870.00 for the use of Fish & Neave secretarial services, word processing equipment, library and general office staff. These services are generally considered part of an attorney's overhead, and as such, have usually been deleted from awards made to attorneys

under 35 U.S.C. § 285. This is a sound practice.

658 F.Supp. at 559 (citations omitted).

I agree with the position of defendants and reject plaintiffs' application for overhead charges which amount to a total of $54,437.61.

### V. *Disbursements*

Defendants also contend that the disbursements sought by Fish & Neave should be reduced by the amount of $219,-707 which Mr. Fey admits would be taxable as costs under 28 U.S.C. § 1920. *See* Affidavit of Albert E. Fey, at 2 n. 1.

██ I agree with defendants that, if plaintiffs are going to recover the $219,707 as costs under 28 U.S.C. § 1920, plaintiffs should *not* also recover that amount in their attorney fee petition. However, at this time, it is not clear whether plaintiffs will file a Bill of Costs under section 1920. Therefore, I will not deduct this amount from the total amount requested for disbursements. If, however, plaintiffs file a Bill of Costs at a later time and recover cost thereunder, defendants will be entitled to an appropriate set-off.

### VI. *Fees Requested for Preparation of the Fee Petition*

██ In the present case, plaintiffs request $45,536.00 for preparing the fee petition which represents 269 hours of work.

Defendants summarily contend that plaintiffs' requested fees for preparation of their fee petition is unreasonable on its face and request this court to reduce the amount by 70%—a 50% reduction for a rate adjustment and a 20% reduction for duplications of efforts. However, defendants do not point to any record evidence to support their argument that the time spent in preparation of the fee petition was excessive. *See Chromalloy American Corp. v. Alloy Surfaces Co.,* 353 F.Supp. 429, 431 (D.Del.1973) ("Only if the evidence reveals that the rate actually charged is abnormally high or abnormally low will the Court base an attorney fee award on an hourly rate at variance with the bill for legal ser-

vices that was actually rendered to the client.")

I conclude that the time spent preparing the fee petition was reasonable and *not* excessive. First, the majority of the work on the fee petition was performed by associates and paralegals. The two partners who worked on the fee petition, Mr. Fey and Mr. Ousterhout, spent a total of 14 hours on the fee petition—which is approximately 5% percent of the total number of hours spent on the fee petition (269 hours). Second, this case is six years old, so there were many records to obtain and organize in preparation of the fee petition. Finally, the fee petition was very well prepared.

However, in light of my decision to not permit recovery of expenses that are normally considered to be overhead, I shall *not* award plaintiffs the fees which they requested for the time spent on the fee petition by secretaries, accounting personnel, and word processing personnel. Therefore, I shall award plaintiffs $43,235 for the preparation of their fee petition, which represents 204.5 hours of work performed by attorneys and paralegals.

## VII. *Prejudgment Interest*

Plaintiffs request an award of prejudgment interest on their attorney fees. Defendants assert that an award of prejudgment interest in a patent case, in which the prevailing party's counsel has been paid by its client on an ongoing basis, is unreasonable. In support of its assertion, defendants cite *Scott Paper Company v. Moore Business Forms, Inc.,* 604 F.Supp. 835 (D.Del.1984).

In *Scott Paper,* the court denied an award of prejudgment interest on the attorney fees granted and provided the following rationale for its decision:

> Finally, the court in its discretion, will deny an award of prejudgment interest in the amount of $139,486.00 on the attorney fee award granted. In the first place, the attorney fees and expenses would have been dispersed in any event during the prosecution of this case and would not have been recoverable until this Court determined that the case was

"exceptional." This determination was not made until September 5, 1984. Thus, it could not be said that Scott was out-of-pocket until that date. Secondly, the court is of the opinion that by doubling the judgment under § 284 for willfulness has made Scott more than "whole" for all sums expended in this case and that should be sufficient.

*Id.* at 838–39.

 I agree with defendants' position. I conclude that, under all the circumstances, an award of prejudgment interest is *not* appropriate in this case. First, plaintiff's counsel has been paid on an ongoing basis throughout the pendency of this action, and, thus, has never been out-of-pocket. Second, attorney fees were not even recoverable until this court found that this case was exceptional. This determination was made on May 22, 1990. Therefore, it could not be said that Arrow was out-of-pocket until that date. Finally, the trebling of the judgment pursuant to 35 U.S.C. § 284 for willful infringement has made plaintiffs more than "whole" for all sums expended in this case.

## VIII. *Apportionment of Attorney Fee Award Between Defendants*

Plaintiffs suggest that the attorney fee award be divided proportionally in relation to the damages assessed against each defendant, rather than dividing the attorney fee award equally between the two defendants. Plaintiff provides two reasons for this suggested approach: (1) this approach would provide a distribution of the attorney fees commensurate with the amount of injury caused by each defendant; (2) this approach helps to assure that plaintiffs will in fact recover the attorney fees awarded because MedComp could not satisfy a $1 million judgment on attorney fees.

On this issue, the two defendants disagree—obviously. Defendant AHS contends that the award for attorney fees should be equally divided between the two defendants because plaintiffs never allege that they would have actually incurred less than one-half of the amount requested in attorney fees if MedComp had been the

only defendant. Furthermore, defendant AHS contends that plaintiffs do not provide any breakdown for the fees incurred and services attributable to MedComp and those attributable to AHS.

On the other hand, MedComp agrees with plaintiffs that the attorney fee award should be divided in proportion to the damages assessed against each defendant. MedComp points out that one-half of the attorney fees requested by plaintiffs far exceeds the total damages assessed against MedComp, and therefore would be disproportionate to MedComp's size and the amount of damages assessed against it. MedComp also points out that it is *not* likely that plaintiffs would have expended over $2 million in attorneys fees to prosecute a case against MedComp alone because MedComp's total sales of infringing catheters have been less than $1 million. MedComp further states that plaintiffs had an incentive to prosecute their case vigorously because AHS (now Baxter Travenol) is a much larger company which has a much larger sales volume.

■■■ I agree with the position of plaintiffs and defendant MedComp that the attorney fee award should be divided in proportion to the damages assessed against each defendant. AHS and MedComp have not contributed equally to the injury sustained by plaintiffs as a result of defendants' willful infringement. AHS's sales of infringing triple lumen catheters totalled over $34.5 million, while MedComp's total sales were less that $1 million. In 1989, MedComp's sales of triple lumen catheters were less than $80,000 compared with AHS's sales of more than $6.5 million. The $16,676,325.70 in damages assessed against AHS is about 30 times greater than the $554,106.60 in damages assessed against MedComp. Furthermore, considering that MedComp's total sales of triple lumen catheters were less $1 million, it is only logical that plaintiffs would *not* have spent approximately $2 million to prosecute a case against MedComp alone. Therefore, considerations of equity require that the attorney fee award be assessed against the two defendants in a manner commensurate with the damage that each defendant caused.

An appropriate order follows.

### ORDER

Upon consideration of plaintiffs' petition for attorney fees and supporting affidavits and exhibits, plaintiffs' supplement to plaintiffs' petition for attorney fees, defendants objections, the parties' oral arguments, and for the reasons stated in open court on Wednesday, October 31, 1990 and the reasons stated in the accompanying memorandum,

IT IS ORDERED THAT:

1. Plaintiffs are awarded all of the fees, costs, and expenses requested in their fee petition, except for (1) the overhead expenses totalling $54,437.61, and (2) the professional fees and disbursements for services rendered by the law firm of Synnestvedt & Lechner totalling $39,391.35.

2. The two disallowed items total $93,828.96.

3. The total award of plaintiffs' attorney fees, costs, and expenses, pursuant to 35 U.S.C. § 285, is $1,949,448.49. This equals the amount requested by plaintiffs minus the two disallowed items [$2,043,277.45—$93,828.96].

4. The total sum awarded shall be divided between defendants American Hospital Supply Co. ("AHS") and Medical Components, Inc. ("MedComp") in proportion to the damages assessed against each defendant.

5. The portion of the total award of plaintiffs' attorney fees, costs, and expenses awarded against defendant AHS is $1,885,506.58.

6. The portion of the total award of plaintiffs' attorney fees, costs, and expenses awarded against defendant MedComp is $63,941.91.

7. Plaintiffs shall recover from defendants post-judgment interest on the respective awards of attorney fees, costs, and expenses, calculated from the date of entry of this Order at the rate of 7.51%.

8. Paragraphs 9 and 10 of the Final Judgment and Injunction dated June 8, 1990 are hereby amended to include the foregoing awards of plaintiffs' attorney fees, costs, and expenses, and post-judgment interest.

ACCORDINGLY, plaintiffs' petition for attorney fees is GRANTED IN PART and DENIED IN PART.