**STRYKER CORPORATION and Osteonics Corporation, Plaintiffs,**

v.

**INTERMEDICS ORTHOPEDICS, INC. and Marli Medical Supplies, Inc., Defendants.**

**No. CV 90–3006 (ADS).**

United States District Court, E.D. New York.

Sept. 2, 1995.

Morgan & Finnegan, New York City, for plaintiffs (John A. Diaz, Robert E. Paulson, Christopher A. Hughes, James W. Gould, Michael A. Nicodema, and Andrea L. Wayda, of counsel).

Bell, Seltzer, Park & Gibson, Charlotte, NC (Larry C. Jones, Frank B. Wyatt, II, Guy R. Gosnell, of counsel), Fulbright & Jaworski, Houston, TX (James W. Repass, Patricia J. Kerrigan, of counsel), and Fulbright & Jaworski, New York City (Ralph Dawson, of counsel), for defendants.

## MEMORANDUM OF DECISION AND ORDER RE: ATTORNEYS' FEES AND COSTS

SPATT, District Judge:

On July 11, 1995, the Court issued a decision in this case finding that the defendants Intermedics Orthopedics, Inc. ("Intermedics" or "IOI") and Marli Medical Supplies, Inc. ("Marli") literally and willfully infringed claims 8, 10 and 12 of United States Patent No. 4,888,023 ("the 023 patent") by designing, marketing and selling a femoral prosthesis known as the APR II and its successor the APR II–T (the APR II and APR II–T shall be referred to as the "APR II"). In addition, the Court determined that the defense of reverse doctrine of equivalents was unavailable to Intermedics, because the APR II does not function in a substantially different way from the 023 patent. The Court further determined that the 023 patent is valid and enforceable.

The Court also concluded that the plaintiff Osteonics Corporation ("Osteonics") had proven its lost profits. Based on the evidence adduced at trial, the plaintiff was awarded lost incremental profits for the period May 1, 1990 to March 31, 1993 in the sum of $23,421,076, together with prejudgment interest at the prime rate for the period May 1, 1990 until July 15, 1993 in the sum of $2,927,908. The Plaintiff's total damage award was $26,348,984. This award was enhanced by doubling the amount of the award, thus resulting in total damages to Osteonics of $52,697,968. Finally, the Court held that Osteonics was entitled to an award of reasonable attorneys' fees and costs, and permanent injunctive relief against further infringement.

Presently before the Court is Osteonics's application for reasonable attorneys' fees and costs pursuant to 35 U.S.C. § 285 (the "fee application"), and a proposed form of Judgment. For the purposes of this decision, the defendants and the plaintiffs shall be referred to in the singular.

**The Plaintiff's Fee Application and the Defendant's Objections.**

Originally, the plaintiff submitted its application for reasonable attorneys' fees in the amount of $5,059,905.50, and for disbursements in the amount of $1,036,509.66. Its total application for reasonable attorneys' fees and disbursements was in the amount of $6,096,415.60. In addition, the plaintiff sought to add $679,004 in prejudgment interest to this amount, in order to be compensated for the amount of fees and costs it has already paid during the course of this litigation, which it estimates to be $3,994,836. The initial fee application, however, has been revised at the direction of the Court. The revisions will be discussed below in more detail.

The plaintiff's initial fee application represents compensation to its attorneys, the law firm of Morgan & Finnegan, LLP ("M & F"), for a total of 23,858.05 in attorney hours and 9,551.825 in law clerk and paralegal hours spent in litigating this case. The fee application encompasses the five year period from August 1990 until July 1995, which period has been delineated by the plaintiff as consisting of the following seven phases: (i) the commencement of this action in August, 1990, and defending against an action for a declaratory judgment on the validity of the 023 patent filed by the defendant Intermedics in the Western District of Texas after the plaintiff commenced the present action (the "Declaratory Judgment action" or "Texas action"); (ii) fact discovery on the merits of liability and damages; (iii) expert witness discovery and preparation of expert reports; (iv) preparation of pre-trial memoranda, motions and exhibits; (v) witness preparation and the conducting of a trial on all issues; (vi) preparation of post-trial memoranda and presentation of closing arguments; and (vii) preparation of the present application for reasonable attorneys' fees and costs. The plaintiff's initial fee application is set forth in the Affidavit of Robert E. Paulson, Esq., dated July 26, 1995 ("Paulson Affidavit"), and the fees and costs associated with each of the aforementioned phases are summarized in Exhibit C to the Paulson Affidavit.

On the other hand, the defendant raises several objections to the fee application. First, it contends that the application improperly seeks compensation for fees paid to expert witnesses. According to the Intermedics, 35 U.S.C. § 285 does not authorize an award of expert witness fees, and any such award in this case must be within the $40 per day limit set forth in 28 U.S.C. 1821(b).

Second, the defendant contends that it was improper for the Court to double the amount of prejudgment interest granted to the plaintiff when the plaintiff's damages award was enhanced. The defendant argues that prejudgment interest is compensatory in nature, and cannot be applied to the punitive aspect of an award.

Third, the defendant contends that, for reasons similar to those concerning the impropriety of doubling the prejudgment interest award, the plaintiff cannot seek prejudgment interest with respect to the amount of attorneys' fees it has already expended to date.

Fourth, the defendant contends that the fee application includes fees and expenses

from a law firm in Texas, Locke Purnell Rain & Harell ("Locke Purnell") acting as local counsel to M & F in the Declaratory Judgment action. Local counsel assisted M & F in moving to dismiss the Texas action, or transfer it to the Eastern District of New York. The defendant maintains that fees were not awarded in the Texas action, and therefore the fees and expenses related to that suit should not be part of the present fee application.

Fifth, the defendant contends that the fee application itself is not supported by adequate documentation. According to Intermedics, "[e]ntire pages of time entries have been redacted from the submitted materials" and M & F has failed to submit its actual attorney diary entries, thereby making it difficult for the defendant to challenge the application. In certain instances, the defendant claims that the records aggregate work performed by several attorneys, and do not allow the Court to ascertain the amount of time individual attorneys expended on certain tasks. Moreover, Intermedics contends that it cannot distinguish to what extent the fee application concerns expenses related to the reexamination proceedings before the Patent Office.

Finally, Intermedics contends that the fee application is exorbitant and excessive, and includes much duplication of tasks.

## DISCUSSION

*Calculation of Attorneys' Fees in a Civil Case.*

In calculating an award of reasonable attorneys' fees in a civil case, the District Court should focus "on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.... The most critical factor is the degree of success obtained." *Hensley v. Eckerhart,* 461 U.S. 424, 435–36, 103 S.Ct. 1933, 1940–41, 76 L.Ed.2d 40 (1983). Further, "[h]ours spent on claims unrelated to those forming the basis of the claim giving rise to the fee award must be excluded unless the claims 'involve a common core of facts or will be based on related legal theories.'" *Rosario v. Amalgamated Ladies' Garment Cutters' Union,* 749 F.2d 1000, 1004 (2d Cir.

1984) (quoting *Hensley,* 461 U.S. at 435, 103 S.Ct. at 1940)).

■ The amount of an award of attorneys' fees in a civil case is determined by the "lodestar" method. *Blanchard v. Bergeron,* 489 U.S. 87, 94, 109 S.Ct. 939, 945, 103 L.Ed.2d 67 (1989); *Cruz v. Local Union No. 3 of the Int'l Bhd of Elec. Workers,* 34 F.3d 1148, 1159 (2d Cir.1994). That method initially estimates the amount of the fee award by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 478 U.S. 546, 563, 106 S.Ct. 3088, 3097, 92 L.Ed.2d 439 (1986). A reasonable attorneys fee is,

> one calculated on the basis of rates and practices prevailing in the market, *i.e.,* "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation," and one that grants the successful civil rights plaintiff a "fully compensatory fee," comparable to what "is traditional with attorneys compensated by a fee-paying client."

*Missouri v. Jenkins,* 491 U.S. 274, 286, 109 S.Ct. 2463, 2470, 105 L.Ed.2d 229 (1989) (citation omitted). *See also Blum v. Stenson,* 465 U.S. 886, 895–96 & n. 11, 104 S.Ct. 1541, 1547 & n. 11, 79 L.Ed.2d 891 (1984).

The product of reasonable hours times a reasonable rate does not end the inquiry. "There remain other considerations that may lead the district court to adjust the fee upward or downward." *Hensley,* 461 U.S. at 434, 103 S.Ct. at 1940. In considering an adjustment to the lodestar calculation in order to arrive at a "reasonable" amount of an award of attorneys' fees in a civil rights case, the district court may consider the twelve factors set forth by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–719 (5th Cir.1974). These factors are: (1) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7)

time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

■ However, many of these factors are subsumed within the initial lodestar calculation. Thus, in *Blum*, 465 U.S. at 898–900, 104 S.Ct. at 1548–50, the Supreme Court held that the novelty and complexity of the issues, the quality of representation, the special skill and experience of counsel, and the results obtained are factors fully reflected in the lodestar calculation and cannot serve as independent bases for adjusting the basic fee award. *See also, Delaware Valley Citizens' Council*, 478 U.S. at 564–65, 106 S.Ct. at 3097–98; *United States Football League v. National Football League*, 887 F.2d 408, 415 (2d Cir.1989), *cert. denied*, 493 U.S. 1071, 110 S.Ct. 1116, 107 L.Ed.2d 1022 (1990).

In determining the specific amount of an attorneys' fee, the prevailing parties "are entitled to reasonable hourly rates which fall within the prevailing marketplace rates in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Cruz*, 34 F.3d at 1159; *New York State Nat'l Org. for Women v. Terry*, 737 F.Supp. 1350, 1361 (S.D.N.Y. 1990) (citation omitted), *aff'd in part, rev'd in part on other grounds*, 961 F.2d 390 (2d Cir.1992).

■ Furthermore, central to an application for attorneys' fees is the submission of time records reflecting the hours expended by counsel in pursuing the successful claims of their client. In order for a party to recover attorneys' fees, such time records must be made contemporaneously with the associated work. *Lewis v. Coughlin*, 801 F.2d 570, 577 (2d Cir.1986). It is not necessary for the applicant to submit the actual diary entries made by the attorneys at the time they perform the work. Rather, reconstruction of such contemporaneous records on a computer and billing based on these records is adequate. *Cruz*, 34 F.3d at 1160. What is important is that "[t]hese records should specify, for each attorney, the date, the hours expended, and the nature of the work done." *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir.1983). "The burden is on counsel to keep and present records from which the court may determine the nature of the work done, the need for it, and the amount of time reasonably required; where adequate contemporaneous records have not been kept, the court should not award the full amount requested." *F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1265 (2d Cir.1987) (applying New York State law and noting that the Second Circuit rule is similar to that of New York); *see also Soler v. G & U Inc.*, 801 F.Supp. 1056 (S.D.N.Y. 1992).

With regard to costs and disbursements, a court will generally award "those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee paying clients." *Reichman v. Bonsignore, Brignati & Mazzotta, P.C.*, 818 F.2d 278, 283 (2d Cir.1987). "A prevailing party may be reimbursed for expenditures which add to the proceeding and are not part of the attorneys' ordinary overhead." *Terry*, 737 F.Supp. at 1363.

With these principles in mind, the Court will address each of the defendant's objections.

### 1. Expert Witness Fees.

■ The defendants contend that the statute authorizing reasonable attorneys' fees in patent infringement cases, 35 U.S.C. § 285, does not authorize an award of expert witness fees. According to the defendants, witness fees may be awarded pursuant to 28 U.S.C. § 1920, and that any such award is limited to $40 per day for each day of attendance as prescribed in 28 U.S.C. 1821(b).

The defendants are correct in this contention. Very recently, the United States Court of Appeals for the Federal Circuit explicitly held that section 285 does not authorize an award of expert witness fees. *Amsted Industries, Inc. v. Buckeye Steel Castings Co.*, 23 F.3d 374, 377 (Fed.Cir.1994) (citing *West Virginia University Hospitals, Inc. v. Casey*, 499 U.S. 83, 95, 111 S.Ct. 1138, 1145, 113

L.Ed.2d 68 (1991)). Rather, in a patent case "expert witness fees fall under 28 U.S.C. § 1920, subject to the 28 U.S.C. § 1821(b) limitation." *Amsted,* 23 F.3d at 377.

Moreover, the Federal Circuit held in *Amsted* that for a court to exercise its inherent equitable powers and impose expert witness fees in excess of the statutory limit set forth in section 1821(b), it must first make a finding of fraud, abuse of the judicial process or something tantamount to "the very temple of justice [being] defiled." *Id.* at 378. Indeed, *Amsted* distinguished between a case which qualifies as "exceptional" under section 285 for the purpose of awarding reasonable attorneys' fees, and "very exceptional" cases of "gross injustice" which qualify for sanctions in the form of awarding expert witness fees in excess of the section 1821(b) statutory cap. *Id.* (citing *Chambers v. NASCO, Inc.,* 501 U.S. 32, 50–51, 111 S.Ct. 2123, 2136, 115 L.Ed.2d 27 (1991)); *Mathis v. Spears,* 857 F.2d 749, 758 (Fed.Cir.1988).

In this case there has been neither fraud, abuse of the judicial process or any other gross injustice perpetrated by the defendants. In the Court's view the case does not qualify as the kind of "very exceptional" case which would warrant granting expert witness fees in excess of the statutory cap mandated by section 1851(b).

Accordingly, the plaintiff's application for reimbursement of its expert witness fees will be denied to the extent the application seeks remuneration in excess of the $40 per day attendance limit set forth in 28 U.S.C. § 1821(b). Moreover, any other costs related to expert witnesses, such as travel, lodging and meals, must comport with the limitations provided by the remaining provisions of section 1821.

After being apprised by telephone of the Court's determination regarding expert witness fees and expenses, the plaintiff's counsel submitted an affidavit stating that the plaintiff waives its claim for expert witness fees and related expenses allowable under 28 U.S.C. § 1821, and was accordingly deducting $473,097 in expert witness fees and expenses from the disbursements included in its fee application. As a result, the plaintiff's fee application seeks only $563,413 ($1,036,-509 less $473,097 of expert witness fees) in disbursements.

## 2. Prejudgment Interest.

■ The defendants maintain that it was improper for the Court to double the amount of prejudgment interest granted to the plaintiffs when the plaintiff's damages award was enhanced. According to the defendants, prejudgment interest is compensatory in nature and cannot be applied to the punitive aspect of an enhanced award.

■ Notwithstanding the plaintiff's contentions to the contrary, which are discussed below, the Court agrees that it is mistaken to double the amount of prejudgment interest when it enhanced the plaintiff's damages award. According to the Federal Circuit, prejudgment interest is designed to compensate for the delay a patentee experiences in obtaining money he, she or it would have received sooner if no infringement occurred, while enhanced damages, on the other hand, are in nature a punishment. *Beatrice Foods Co. v. New England Printing and Lithographing Co.,* 923 F.2d 1576, 1580 (Fed.Cir. 1991) (quotations omitted, citing *Paper Converting Machine Co. v. Magna–Graphics Corp.,* 745 F.2d 11, 23 (Fed.Cir.1984)). As a result, prejudgment interest can only be applied to the primary or actual damage portion and not to the punitive or enhanced portion of a damage award. *Beatrice Foods,* 923 F.2d at 1580 (quotations omitted, citing *Underwater Devices Inc. v. Morrison–Knudsen Co.,* 717 F.2d 1380, 1389 (Fed.Cir.1983)). *See also Lam, Inc. v. Johns–Manville Corp.,* 718 F.2d 1056, 1066 (Fed.Cir.1983).

The plaintiff contends that the Court need not do so. Osteonics first argues that the Court's doubling of the prejudgment interest does not contravene the ruling of *Lam,* because that case involved a trebling of the damage award. The Court is not persuaded by this argument. The rule established by *Lam* and *Underwater Devices* requires awarding prejudgment interest only on the compensatory portion of the damages award, and not on the punitive portion. Thus, doubling the damages award and the corresponding prejudgment interest still contravenes the rule that prejudgment interest can

only be applied to the compensatory aspect of a damages award.

In an effort to circumvent the rule, the plaintiff next contends that Court could maintain the same overall total damages award by keeping the original amount of the prejudgment interest awarded, but enhancing the lost profits award by a factor of 2.3. The Court declines to do this.

Accordingly, the Court will recalculate the prejudgment interest and damage award. The plaintiff was awarded lost incremental profits for the period May 1, 1990 to March 31, 1993 in the sum of $23,421,076. At the time the Court rendered its decision granting the award, the plaintiff had calculated prejudgment interest on its lost incremental profits at the prime rate, but only for the period May 1, 1990 until July 15, 1993. The amount of such interest was calculated at $2,927,908. The plaintiff has now submitted a revised calculation of prejudgment interest on its incremental lost profits, running from May 1, 1990 through the date expected for entry of a judgment, August 31, 1995. The total amount of prejudgment interest is calculated to be $6,853,803. The defendant agrees that this is the correct amount of prejudgment interest for the relevant time period on the plaintiff's lost incremental profits, and the Court therefore grants this amount as the prejudgment interest awarded to the plaintiff in this case.

Doubling the plaintiff's lost incremental profits award results in enhancing the award from $23,421,076 to 46,842,152. Combining this enhanced award with the amount of prejudgment interest granted through August 31, 1995, namely $6,853,803, results in a total damages award—before reasonable attorneys' fees and costs—of $53,695,955.

■ The plaintiff also seeks prejudgment interest on the portion of its requested attorneys' fees and costs that has already been expended. The amount of such interest is calculated by the plaintiff to be $679,004. The Court, however, declines to grant such prejudgment interest on the attorneys' fees and costs. An award of attorneys fees and costs under section 285 is not compensatory, but rather is punitive in nature. Granting such an award is a "fee shifting sanction" imposed in exceptional circumstances. *See, e.g., L.E.A. Dynatech, Inc. v. Allina,* 49 F.3d 1527, 1533–34 (Fed.Cir.1995) (Judge Schall, concurring in part and dissenting in part). Because prejudgment interest is only to be awarded on the compensatory portion of a damage award, *Beatrice Foods,* 923 F.2d at 1580, in the Court's view it is improper to grant prejudgment interest on any portion of the plaintiff's attorneys' fees and costs.

### 3. Adequate Documentation and Related Proceedings.

The defendant contends that the plaintiff's fee application is not supported by adequate documentation. Among the alleged documentation inadequacies, the defendants point to M & F's failure to submit actual attorney diary entries, and complain that M & F aggregated its attorneys' work without delineating how much and which task individual attorneys performed.

In addition, Intermedics contends that it cannot distinguish to what extent the fee application concerns expenses related to the reexamination proceedings before the Patent Office. Moreover, the defendant objects to the plaintiff's inclusion of fees and expenses for work performed by local counsel related to the Declaratory Judgment action filed by Intermedics in Texas.

■ With regard to the adequacy of M & F's documentation it is the Court's view that, except for the aggregation problem, which will be discussed later, the time sheets delineating the individual attorneys' work adequately document the fee application, because they specify for each attorney the date, the hours expended, and the nature of the work he or she performed. As stated above, reconstruction of contemporaneous records on a computer suffices for purposes of the fee application, and the diary entries of the individual attorneys are simply not necessary. *Cruz,* 34 F.3d at 1160. *See also PPG Indus. Inc. v. Celanese Polymer Specialties Co.,* 840 F.2d 1565, 1570 (Fed.Cir.1988) ("Attorney fees are allowable if they are based on records that are substantially reconstructed and reasonably accurate.").

With regard to the defendant's contention that the fee application does not allow them to distinguish to what extent it includes expenses related to the reexamination proceedings before the Patent Office, the plaintiff's attorney Robert E. Paulsen, Esq. attests in his Supplemental Affidavit dated August 25, 1995, at ¶ 6, that the fee application does not include fees and related expenses incurred in connection with the 023 patent reexamination proceedings. The Court accepts this representation by counsel.

■ The Court, however, finds the plaintiff's request for fees and expenses related to the Declaratory Judgment action in Texas to be problematic. The plaintiff's contend that they are entitled to the attorneys' fees and expenses incurred in the Texas action because that action is "part and parcel" of the present action. On the other hand, the defendant contends that the plaintiff has not cited any authority to support its claim for fees and expenses incurred in the Texas action. According to Intermedics, no statute or authority permits a trial court in one lawsuit to award attorneys' fees and expenses incurred in a separate lawsuit, even if the subject matter of the two lawsuits is related.

■ In the Court's view, the plaintiff is not entitled to the fees and expenses incurred in the Declaratory Judgment action. The general rule seems to be that a district court may not award fees for work performed in related cases in other jurisdictions. *See, e.g., Lundin v. Mecham,* 980 F.2d 1450, 1461 (D.C.Cir.1992) (attorneys' fees in related cases cannot be recovered under the Equal Access to Justice Act); *Home Placement Service, Inc. v. Providence Journal Co.,* 739 F.2d 671, 677 (1st Cir.1984) (denying attorneys' fees and costs incurred in a related anti-trust case between the same parties, despite the related action providing the record for the action in which the fees and costs were awarded).

The only exception to this rule is when the related action is a prior administrative or state court proceeding that is "intimately connected" with the action in which the fees are awarded, or is otherwise "necessary" to the prosecution of the claims recoverable under the statute authorizing the fees. *See Lundin,* 980 F.2d at 1462 (citing cases). The reason for this exception is that a federal court has jurisdiction over cases which require administrative proceedings or state court determinations before the federal action is adjudicated. However, no such jurisdiction exists over a related case treating identical issues in a different circuit. *Id.*

The United States Court of Appeals for the Third Circuit has expanded the above-described exception, and allows recovery of attorneys' fees and costs incurred in related proceedings if (1) the fees and expenses incurred in the related litigation "resulted in work product that was actually utilized in the instant litigation," (2) the plaintiff was not previously compensated for those fees and expenses, and (3) the time spent on the related litigation was "inextricably linked" to the issues raised in the present litigation. *See Gulfstream III Assocs., Inc. v. Gulfstream Aerospace Corp.,* 995 F.2d 414, 420 (3d Cir. 1993); *Keenan v. City of Philadelphia,* 983 F.2d 459, 474 (3rd Cir.1992).

Based on the above principles of law, the plaintiff is not entitled to the attorneys' fees or costs it incurred in the Declaratory Judgment action, even under the more liberal Third Circuit standard. The Declaratory Judgment action did not result in any work product being actually used in the patent infringement case tried before this Court, and was neither necessary nor preliminary to the adjudication of the 023 patent infringement claims prosecuted by the plaintiff here. In the Court's view, the hours spent on the Texas action by M & F and Locke Purnell attorneys were devoted to a motion to dismiss the action or transfer it to this Court. The hours were not related to work on the infringement claims which formed "the basis of the claim giving rise to the fee award." *Rosario,* 749 F.2d at 1004.

According to Osteonics's counsel, the present fee application includes $155,656.50 in fees representing approximately 793.25 hours of M & F attorney work, and $12,464.61 in related costs, which were incurred by the plaintiff in defending against Intermedics's Declaratory Judgement action in Texas. *See* the Supplemental Affidavit of Andrea L. Wayda, Esq., dated August 31, 1995, at ¶ 7.

This amount, plus any fees for law clerk and paralegal work expended in the Texas action, will be deleted from the present fee application.

### 4. The Amount of Attorneys' Fees.

█ As mentioned above, prevailing parties are entitled to reasonable hourly rates which fall within the prevailing marketplace rates in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation. The emphasis is on *reasonable*. *Cruz,* 34 F.3d at 1159 (quoting *Blum v. Stenson,* 465 U.S. 886, 896 n. 11, 104 S.Ct. 1541, 1547 n. 11, 79 L.Ed.2d 891 (1984)). The "prevailing community" the district court should look to when considering the lodestar figure is the district in which the court sits. *Cruz,* 34 F.3d at 1159.

The Plaintiff's counsel has initially submitted a fee application which seeks compensation for 23,851.75 hours of attorney work and 9,550.625 of law clerk and paralegal work expended on this case by M & F from August 1990 until July 26, 1995. The attorneys responsible for the majority of these hours and their hourly rates are as follows:

| | | |
|---|---|---|
| John A. Diaz | 1632.25 hrs. @ | $275/hr |
| Robert E. Paulsen | 3445.75 hrs. @ | $240/hr |
| Christopher A. Hughes | 3003.50 hrs. @ | $215–$230/hr |
| James W. Gould | 949.50 hrs. @ | $230/hr |
| Michael A. Nicodema | 4821.25 hrs. @ | $150–$175/hr |
| Andrea L. Wayda | 3035.25 hrs. @ | $125/hr |
| M.J. Timmons | 4797.75 hrs. @ | $125/hr |
| J. DiMatteo | 511.00 hrs. @ | $125/hr |

However, as stated previously, the fee hours submitted by M & F for these attorneys must be reduced by the amount of hours they spent working on the Declaratory Judgment action in Texas. According to the figures provided in Paragraph 8 of the Supplemental Affidavit of Ms. Wayda, the revised attorneys' hours reflecting a reduction for the work performed in Texas is as follows:

| | |
|---|---|
| John A. Diaz | 1629.25 hrs. |
| Robert E. Paulsen | 3352.75 hrs. |
| Christopher A. Hughes | 2769.75 hrs. |
| James W. Gould | 949.50 hrs. |
| Michael A. Nicodema | 4612.50 hrs. |
| Andrea L. Wayda | 3035.25 hrs. |
| M.J. Timmons | 4775.75 hrs. |
| J. DiMatteo | 278.25 hrs. |

In addition to these attorneys, other attorneys working on this case were responsible for approximately 1,400 hours of work on the case. Included in the hourly figure is 572 hours expended by J. Dore, a partner, who is compensated at the rate of $215 per hour.

According to M & F, the average weighted hourly billing rate charged by its partners is $230 per hour, and that of its associates is approximately $130 per hour. The rate M & F charges for its law clerks and paralegals is between $75 and $80 per hour.

The plaintiff's counsel contends that the rates charged by its attorneys in this case are well within the customary and accepted hourly rates charged by litigating partners and associates practicing in the New York area. To support its contention, M & F has submitted excerpts from the 1991 and 1993 "Report of Economic Survey" published by the American Intellectual Property Law Association. According to this report, the median hourly billing rate of a litigating partner practicing in New York was $247 per hour in 1991 and $283 per hour in 1993. The median hourly billing rate of a litigating associate practicing in New York was $163 per hour in 1991 and $187 per hour in 1993. The plaintiff emphasizes that the rates charged by its attorneys are well below these figures.

█ The Court has reviewed the applicable law in this Circuit and determines that, based upon the type of work performed and the experience of the attorneys, the following maximum rates are fair and *reasonable,* except for M & F partner John A. Diaz: for partners, no more than $200 per hour; for associates, no more than $135 per hour. These rates have been upheld in the Second Circuit as within the scope of the Court's discretion to impose. *See Cruz,* 34 F.3d at 1160. *See also Huntington Branch NAACP v. Town of Huntington,* 749 F.Supp. 62, 65 (E.D.N.Y.1990) (rates of $135–$225 per hour appropriate in housing discrimination case, where counsel performed "extremely ably" and have experience in civil rights cases); *Nu–Life Constr. Corp. v. Board of Educ.,* 795 F.Supp. 602, 606 (E.D.N.Y.1992) (counsel awarded fees at rates of $165–$200 per hour in RICO action after an eleven week jury

trial), *aff'd in relevant part,* 28 F.3d 1335, 1342 (2d Cir.1994).

■ Accordingly, all of the M & F partners except Mr. Diaz should be compensated at no more than $200 per hour. Because of the seniority and trial experience of Mr. Diaz, the Court will grant him compensation at $250 per hour. The rates charged by the M & F associates, namely between $90 and $125 per hour, are below the $135 per hour rate deemed reasonable in this district for associates to charge, and shall not be reduced.

■ In addition, the time of a law clerk and paralegal is also compensable in an award of attorneys' fees. *Missouri v. Jenkins,* 491 U.S. at 285–86, 109 S.Ct. at 2471; *United States Football League,* 887 F.2d at 416. The Court will compensate the plaintiff's counsel for the work performed by law student clerks and paralegals at a rate of $50 per hour. *See Kirschner v. Zoning Bd. of Appeals of Valley Stream,* 159 F.R.D. 391, 398 (E.D.N.Y.1995) (citing cases). Thus, the rates charged by M & F for its law clerks and paralegals is reduced to no more than $50 per hour.

Recalculating the fees charged by M & F at the rates approved by the Court results in the following figures for the attorneys who spent the majority of time on this case:

| | | | | | | |
|------|----------|--------------|---|-----------|---|---------------|
| J.A. | Diaz | 1629.25 hrs. | @ | $250/hr | = | $ 407,312.50 |
| R.E. | Paulsen | 3352.75 hrs. | @ | $200/hr | = | $ 670,550.00 |
| C.A. | Hughes | 2769.75 hrs. | @ | $200/hr | = | $ 553,950.00 |
| J.W. | Gould | 949.50 hrs. | @ | $200/hr | = | $ 189,900.00 |
| M.A. | Nicodema | 1162.50 hrs. | @ | $150/hr | = | $ 174,375.00 |
| | | 3450.00 hrs. | @ | $175/hr | = | $ 603,750.00 |
| A.L. | Wayda | 3035.25 hrs. | @ | $125/hr | = | $ 379,406.25 |
| M.J. | Timmons | 4775.75 hrs. | @ | $125/hr | = | $ 596,968.75 |
| J. | DiMatteo | 278.25 hrs. | @ | $125/hr | = | $ 34,781.25 |
| | **TOTAL** | **21,403.00 hrs** | | | | **$3,610,993.75** |

The fees granted to the other attorneys working on this case are summarized below. These figures were tabulated from the Court's review of M & F's time sheets, attached as Exhibit A to the Paulsen Affidavit, and were corroborated against the attorney and clerk/paralegal hours listed in Exhibit K of the Supplemental Affidavit of Ms. Wayda. Exhibit K lists attorney and clerk/paralegal hours for time spent on this case only, and excludes time spent on the Texas action. The plaintiff has agreed to defer to the Court's calculation of attorney hours, where there is a discrepancy between the Court's tabulation and the plaintiff's. In the figures listed below, J. Dore's fee has been reduced to the $200 per hour rate approved by the Court. In addition, the hours listed by S.B. Howard and C.L. Milone have been reduced to reflect the hours they spent on this case as associates. Their remaining hours spent on this case will be calculated as law clerk hours.

| | | | | | |
|-------------|--------------|---|---------|---|---------------|
| J. Dore | 572.00 hrs. | @ | $200/hr | = | $ 114,400.00 |
| S.F. Meyer | 277.75 hrs. | @ | $150/hr | = | $ 41,662.25 |
| R.K. Goethels | 11.75 hrs. | @ | $125/hr | = | $ 1,468.75 |
| S.B. Howard | 22.25 hrs. | @ | $125/hr | = | $ 2,781.25 |
| J.W. Osborne | 9.00 hrs. | @ | $125/hr | = | $ 1,125.00 |
| R. Van Dyke | 53.50 hrs. | @ | $125/hr | = | $ 6,687.50 |
| C.L. Milone | 25.50 hrs. | @ | $125/hr | = | $ 3,187.50 |
| W.G. Hanchuk | 114.75 hrs. | @ | $110/hr | = | $ 12,622.50 |
| D.R. Auth | 13.00 hrs. | @ | $125/hr | = | $ 1,625.00 |
| M.J. Abate | 50.25 hrs. | @ | $170/hr | = | $ 8,542.50 |
| B.D. Radin | 34.00 hrs. | @ | $160/hr | = | $ 5,440.00 |
| **TOTAL** | **1183.75 hrs** | | | | **$ 199,542.25** |

Thus, the total attorney hours expended on this case by M & F is 22,586.75 hours (21,403 plus 1,183.75), for a total attorneys' fee of $3,810,535.90 ($3,610,993.75 plus $199,542.25).

M & F has also revised its law clerk and paralegal hours to reflect work performed in this case only. Among other revisions, the clerk/paralegal figure now includes 149.25 hours representing work performed by S.B. Howard when he was a law clerk, 192.75 hours representing work performed by C.L. Milone when he was a law clerk, and 1.25 hours representing work performed by a librarian. As revised, the total amount of M & F law clerk and paralegal hours spent on this case is 9,733.475. Multiplying this figure by the $50 per hour rate granted by the Court yields the sum of $486,673.75. The total fee at this point in the calculation can therefore be delineated as follows:

| | |
|---|---|
| Total Attorneys' Fees | $3,810,535.90 |
| Total Law Clerks' and Paralegals' Fees | $ 486,673.75 |
| **TOTAL FEES** | **$4,297,209.65** |

However, calculating the lodestar amount does not end the inquiry. As explained earlier, they may be other considerations that may lead the Court to adjust the fee upward or downward. *Hensley,* 461 U.S. at 434, 103 S.Ct. at 1940. In considering an adjustment to the lodestar calculation in order to arrive at a "reasonable" amount of an award of attorneys' fees, the district court may consider, among other things, the factors set forth in *Johnson v. Georgia Highway Express, Inc.*

■ In this case, the Court believes that a further reduction in the fee award of 25 percent is warranted, because the hours spent on this case by M & F attorneys, law clerks and paralegals are, in the Court's view, excessive. For example, the Court believes it simply was not necessary for M & F to have five attorneys and several clerks attend the trial. Moreover, despite M & F's highly professional trial and witness exhibits, the Court believes much of the exhibit prepa-ration and pre-trial discovery, and other legal work, was duplicative. In addition, M & F's records for the trial time demonstrate an aggregation of attorney time and tasks performed in certain matters.

As a result, the plaintiff's total fee award of $4,297,209.65 will be further reduced by 25 percent, or the sum of $1,074,302.40. The final fee granted to the plaintiff is thus $3,222,907.25.

■ With regard to disbursements, the Court has reviewed the documents submitted by the plaintiffs and believes that, excluding the disbursements associated with the Texas action, the remaining disbursements are "reasonable out-of-pocket expenses" incurred by M & F which are the type of expenses normally charged to fee paying clients. These disbursements are for copying, telephoning, faxing, and attorney travel, and are appropriately compensable. According to the plaintiff's counsel, after waiver of the disbursements related to the expert witnesses, the plaintiff's fee application seeks only $563,413 in disbursements. *See* Wayda Affidavit at ¶ 7. Subtracting from this amount the disbursements from the Texas action, which total $12,464.61, *see* Wayda Supplemental Affidavit at ¶ 7, results in a total disbursements application of $550,-948.39.

The plaintiffs total fee, costs and disbursements application is thus granted in the amount of $3,773,855.54 as follows:

| | |
|---|---|
| FEES | $4,297,209.65 |
| Less 25 percent reduction | $1,074,302.40 |
| NET TOTAL FEES | $3,222,907.25. |
| DISBURSEMENTS | $ 550,948.39 |
| **TOTAL FEES AND DISBURSEMENTS** | **$3,773,855.54** |

For the reasons stated in this decision, it is hereby

**ORDERED,** that this Court's decision of July 11, 1995 is amended to provide that the amount of prejudgment interest granted on

the plaintiff's incremental lost profits award of $23,421,076, is the amount of $6,853,803, which reflects prejudgment interest for the period May 1, 1990 through the August 31, 1995; it is further

ORDERED, that this Court's decision of July 11, 1995 is further amended to provide that the plaintiff's lost incremental profits award is enhancing by doubling the award from $23,421,076 to 46,842,152, and to this sum is added the amount of prejudgment interest granted through August 31, 1995, namely $6,853,803, thereby resulting in a total damages award exclusive of reasonable attorneys' fees and costs of $53,695,955; and it is further

ORDERED, that the plaintiff is granted a total fee, costs and disbursements award in the amount of $3,773,855.54, which represents $3,222,907.25 in attorneys' fees and $550,948.39 in costs and disbursements.

The revised prejudgment interest award, total damages award, and attorneys' fees and disbursements award granted to the plaintiff herein shall be included in a form of Judgment to be submitted by the Parties.

SO ORDERED.