**YAMANOUCHI PHARMACEUTICAL CO., LTD., and Merck & Co., Inc., Plaintiffs,**

v.

**DANBURY PHARMACAL, INC., and Schein Pharmaceutical, Inc., Defendants.**

**Yamanouchi Pharmaceutical Co., Ltd., And Merck & Co., Inc., Plaintiffs,**

v.

**Marsam Pharmaceuticals, Inc., and Schein Pharmaceutical, Inc. Defendants.**

**Nos. 97 CIV. 3403 RO, 97 CIV. 8357 RO.**

United States District Court, S.D. New York.

June 1, 1999.

---

Fitzpatrick, Cella, Harper & Scinto, New York City, Robert L. Baechtold, Hugh C. Barrett, Brian V. Slater, for Plaintiff Yamanouchi Pharmaceutical Co.

William Krovatin, Rahway, NJ, Arnold White & Durkee, Houston, TX, John F. Lynch, for Plaintiff Merck & Co., Inc.

Cummings & Lockwood, Stamford, CT, Barry Kramer, Steven J. Moore, James Jakobsen, for Defendants.

### MEMORANDUM AND ORDER

OWEN, District Judge.

I presided over the trial here that lasted four days in April 1998. I found that the defendants willfully infringed the plaintiffs' patent for famotidine in violation of the Hatch–Waxman Act, *Yamanouchi Pharmaceutical Co. v. Danbury Pharmacal, Inc.*, 21 F.Supp.2d 366, 378 (S.D.N.Y.1998), familiarity with which is assumed. I found that this case constituted an "exceptional case" within the meaning of Section 285, and on that basis awarded attorneys' fees to the plaintiffs, in an amount to be determined. The parties have since submitted post-trial declarations and briefs on this issue.

■ Central here is the reasonableness of the plaintiffs' request. The starting point in determining a fee award is arriving at the lodestar amount—that is, multiplying the reasonable hours spent by a reasonable billing rate. *Blanchard v. Bergeron*, 489 U.S. 87, 94, 109 S.Ct. 939, 103 L.Ed.2d 67 (1989). Reasonable rates are those "normally charged for similar work by attorneys of like skill in the area." *New York State Assoc., for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1140 (2nd Cir.1983). Reasonable hours are those which are "1) thoroughly documented; 2) spent upon the issues which gave rise to the finding of exceptional circumstances; 3) non-duplicative; and 4) not spent in a manner inconsistent with a standard of reasonable efficiency and productivity." *Codex Corp. v. Milgo Electronic Corp.*, 541 F.Supp. 1198, 1203 (D.Mass. 1982) (citations omitted).

As to reasonableness, the defendants assert several objections, which I address in the order presented.

■ First, the defendants claim that the billing rates charged by plaintiffs' attorneys are too high. In determining a reasonable rate, the court may refer to American Intellectual Property Law Association (AIPLA) surveys. *See Mathis v. Spears*, 857 F.2d 749, 755 (Fed.Cir.1988).[1] I do so,

---

1. The defendants assert I may look to rates upheld in various cases. They cite *Stryker Corp. v. Intermedics Orthopedics, Inc.*, 898 F.Supp. 116 (E.D.N.Y.1995) (citing *Cruz v. Local Union No. 3 of the Int'l Brotherhood of Elec. Workers*, 34 F.3d 1148 (2nd Cir.1994)) (awarding a rate of $200–250 for partners and $90–135 for associates); *Luciano v. Olsten Corp.*, 925 F.Supp. 956, 963 (E.D.N.Y. 1996) (awarding rates of $225 for partners and $135 for associates); and *Greenbaum v. Svenska Handelsbanken*, 998 F.Supp. 301, 304

noting, however, that the AIPLA survey's high mark represents the hourly billing rate of the 75th percentile of attorneys reporting, which means that 25 percent of attorneys actually reported above that figure. Moreover, notwithstanding the AIPLA survey, some consideration may be given to the experience, reputation and ability of the attorneys, as well as to the difficulty of the issues presented and the amount at stake in the litigation. *See Hensley v. Eckerhart,* 461 U.S. 424, 429–30, n. 3, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) (citing the twelve factors listed in *Johnson v. Georgia Highway Express,* 488 F.2d 714, 717 (5th Cir.1974)); *Howes v. Medical Components, Inc.,* 761 F.Supp. 1193, 1195–97 (E.D.Pa.1990) (upward departure from AIPLA survey for intellectual property law practitioners because "a party should be entitled to retain the most competent counsel available, particularly in the highly specialized area of complex patent litigation," and plaintiffs' fees were comparable to those of other New York City firms which handle complex litigation); *Stryker Corp. v. Intermedics Orthopedics, Inc.,* 898 F.Supp. 116, 125 (E.D.N.Y.1995) (downward departure from AIPLA "based on the type of work performed and the experience of the attorneys").

■ Yamanouchi's various counsel were highly experienced. The AIPLA guidelines set the rate at $225 to $300 for partners with experience in intellectual property law. However, plaintiffs submitted surveys conducted by *Aspen Law &*

*Business* in 1998, by the *National Law Journal* in 1996, both of which indicate that partners in some of the prominent law firms in New York City charge between $400 and $475 per hour. Each of these surveys include at least one firm which specializes in patent litigation, and the rates listed for those firms are comparable with the others. Thus, although many of the plaintiffs' attorneys billed above the AIPLA rate,[2] I find that the hourly rates were ball-park reasonable for New York City.[3]

■ As to paralegals, the defendants rely on case law for a rate of $50 per hour.[4] Plaintiffs used paralegals from within the law firm as well as from temporary employment agencies. Those from temp agencies billed $23 to $30 per hour, while those from within the law firm were billed at $70 to $95 per hour. With such a range of rates charged, I conclude that the average rate charged is comparable to other paralegals' working on this type of litigation. I do agree with defendants that plaintiffs may not charge a paralegal rate when the paralegal is performing only clerical tasks. *Missouri v. Jenkins,* 491 U.S. 274, 288 n. 10, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989). Plaintiffs note that their paralegals performed numerous tasks, including organizing the case file, preparing materials for attorneys, and keeping track of discovery documents. Since plaintiffs' time records list the attorney or paralegal by their initials, not their full name, it is not reasonable for this

(S.D.N.Y.1998) (awarding a rate of $250 for partners).

2. Robert L. Baechtold, a partner in the firm of Fitzpatrick, Cella, Harper & Scinto, billed approximately 495 hours at $390 per hour. Mr. Baechtold has over 30 years of experience in intellectual property law practice. Similarly, Hugh C. Barrett, a partner who has 25 years of experience, billed approximately 1,900 hours at a rate of $350 per hour. Other attorneys for Yamanouchi billed only slightly above the AIPLA rates.

Merck's attorneys also billed above the AIPLA rates, although it is harder to deal with

these charges since the attorneys at the Texas law firm of Arnold White & Durkee did not provide a breakdown of the total hours on the case spent by each attorney.

3. It is worth mentioning briefly that a determination of reasonable rates is based on the rates appropriate in the city where the litigation took place, not on the rates appropriate in the counsel's business location. *Howes v. Medical Components, Inc.,* 761 F.Supp. 1193, 1195 (E.D.Pa.1990).

4. They cite *Stryker,* 898 F.Supp. at 125–6.

court to look through the submissions to find what tasks each paralegal was performing. While perhaps there may have been some billing for clerical tasks such as "putting documents into boxes," that should have been billed at lower rate, I do not see any specific evidence that the use of paralegals by Yamanouchi and Merck was essentially unreasonable in other ways. Some adjustment hereafter may deal with these uncertainties.

The defendants next contend that the plaintiffs over-staffed the case. First, they contend that Merck did not need to hire separate attorneys since Yamanouchi and Merck had the exact same interest in the litigation, that is, that the patent be found valid (which it was).[5] I disagree. Merck's attorneys performed most of the discovery tasks, which were significant in this case. Second, defendants argue that both Yamanouchi and Merck employed too many attorneys. Nine attorneys are listed in Yamanouchi's submissions, but four of those nine spent less than three hours each on the case. Counsel for Merck did not submit summaries of their billing in a way that facilitates an analysis of their staffing. However, the defendants' implication that this case was a simple one has no merit, and given the time constraints imposed on plaintiffs to prepare their case, as well as the complexity of the issues and the stakes involved, I cannot with confidence say that plaintiffs staffing was unreasonable. I do question why it was necessary to have two *Merck* attorneys present at trial, in addition to the five Yamanouchi attorneys.

As noted above, the submissions from the firm of Arnold, White & Durkee, Merck's outside counsel, do not include cumulative totals for each attorney. However, they do contain contemporaneous daily records of the time spent by each attorney and each paralegal, along with specific descriptions of the work done. In as much as the total fees billed by Arnold White & Durkee are $379,414, this is sufficient to conclude their appropriateness.

Defendants next contend that the plaintiffs have over-billed for the time between the original trial date, which was February 24, and the actual trial date, which was April 6. This trial was originally before Judge Baer, but on the morning of the first day of trial he announced that he had a conflict of interest and withdrew. The case commenced before me six weeks later. Some 365 hours were billed in March, at a cost of over $70 thousand. Plaintiffs contend, and the contemporaneous records submitted show, that these hours were spent outlining expert testimony, preparing witnesses, preparing additional trial exhibits, and making up a list of technical terms for the court reporter's use at trial. They contend that these tasks were necessary and would have been done for the trial even if it had gone forward as scheduled, and that some of tasks for trial preparation are necessarily repeated once the trial date was changed. I am not persuaded that the work done was in any meaningful part unnecessary.

■ The defendants point to four entries on the time sheets kept by both law firms, and claim that plaintiffs have sought fees for matters not related to the claims for which they achieved success, specifically, plaintiffs' investigation into counterclaims of libel, slander, tortious interference, champerty and barratry. While it appears that defendants' complaint concerns only about ten hours for Yamanouchi's counsel out of a total of 6,849.5 billed, defendants are correct in this,[6] and this is figured in hereafter.

■ The defendants next address the plaintiffs' Waldorf–Astoria hotel expenses. They contend that the plaintiffs' attorneys

---

5. Yamanouchi owns the famotidine patent and Merck is a licensee.

6. *See, Hensley v. Eckerhart,* 461 U.S. 424, 435, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983) ("no fee may be awarded for services on the unsuccessful claim").

billed improperly for ministerial tasks, such as moving in and out of the hotel, for time spent explaining the hotel bills to their clients, and for some overnight lodging of Yamanouchi's attorneys who live in the New York area. They also argue that Merck should not be allowed hotel expenses because Merck chose to retain a Texas law firm, not a New York one.

I need not labor over all of the hotel invoices and the reasonableness of each charge, nor over whether it was reasonable for some Yamanouchi attorneys to spend the night in the hotel (plaintiffs point out that Fitzpatrick Cella attorney Hugh Barrett lives in Darien, Connecticut) and not for others (Robert Baechtold and Brian Slater live in New York City). Obviously, some expense for a hotel was reasonable given the international magnitude of this case and the amounts at stake. Trial preparation, I am sure, went on into the night with various parties necessary at various times, and it was expedient to co-ordinate at least some of this preparation by using the services of a hotel. Plaintiffs point out that defendants' counsel (based in Stamford, Connecticut) also stayed at a hotel during the trial, the Marriott at the World Trade Center. I reject defendants' contentions that Merck's counsel is not entitled to hotel expenses because they could have employed a local firm.[7] However, I have a little dis-ease, notwithstanding plaintiffs assert they got a discount from the Waldorf–Astoria, at the over $80 thousand cost of the hotel sought to be reimbursed under court order from the defendants. Approximately $30 thousand of this was the cost of moving into the hotel in preparation for the first trial date. As to this, I note that Yamanouchi's counsels' offices are located at Rockefeller Center, which is only three blocks away from the Waldorf. Similarly off-putting are plaintiffs' additional bills for over $3,100 for renting office furniture, including desks.

■ Defendants argue that Merck's in-house counsel fees are improperly included in the fee award. I conclude that these in-house fees are proper because this case was found to be exceptional and awarding fees in such cases is proper under Section 285. There is nothing in the law that persuades me that there is a meaningful distinction between compensation for legal work done by outside counsel as opposed to in-house counsel.[8] Not only was the time spent by Merck's in-house counsel time that could have been spent on other matters, but also it was more efficient and less costly for Merck to use its in-house counsel to perform those tasks.[9] *See Revlon, Inc. v. Carson Products Co.,* 622 F.Supp. 362, 364–5 (S.D.N.Y.1985), *rev'd on other grounds,* 803 F.2d 676 (Fed.Cir. 1986). I also disagree with defendants that Merck's in-house counsel failed to provide adequate documentation for his work.

■ Defendants argue that plaintiffs disbursements are not recoverable because

---

**7.** I also do not agree with defendants that Merck is not entitled to other hotel and travel expenses associated with employing out-of-town counsel, and therefore allow those charges as well.

**8.** Defendants cite *Gilbreth Int'l Corp. v. Lionel Leisure, Inc.,* which merely states that in-house counsel fees are not allowed because the time expended "was spent in her capacity as (salaried) house counsel for, and as such an employee of" the defendant. 622 F.Supp. 478, 486 (E.D.Pa.1985). I am not persuaded that a prevailing party who relied on the legal services of an employee should not recover under Section 285. They also cite *Broadview*

*Chemical Corp. v. Loctite Corp.,* 311 F.Supp. 447, 454 (D.Conn.1970), which states only that the in-house counsel fees are not recoverable because such representation is "a regular cost of doing business." I disagree, where the fees are awarded because the case is an "exceptional" one, as here.

**9.** I note that Merck's in-house counsel charges only $66 per hour, which is calculated by dividing his yearly salary (*not* including his bonus, health benefits and stock options) by the average number of hours he works per year. This is less than the amount charged by outside counsel for work done by paralegals.

they failed to submit vendor invoices. Plaintiffs submitted detailed computer records of their expenses in the original submission, provided some additional invoices in their reply and offered to provide more. In their reply they also reduced their requested amount by approximately $7,600 to reflect the fact that two attorneys traveled first class. While I accept that reduction, I find that plaintiffs' failure to provide every invoice does not make the essence of their request unreasonable.

■■■ Defendants object to the expenses of Dr. Fuji, Dr. Yanagisawa, Ms. Whittaker and Dr. Dixon. I disagree. Drs. Dixon and Yanagisawa were designated as witnesses but were not in fact called to testify because I ruled for the plaintiffs from the bench after defendants, who went first, rested their case. Defendants had presented their case first since they had the burden of proving the patent's invalidity by clear and convincing evidence. *See Yamanouchi*, 21 F.Supp.2d at 370. The fact that the plaintiffs did not in fact have to call these witnesses does not render invalid their expense in preparing for their appearance.[10] Ms. Whittaker's expenses were similarly necessary since she was an interpreter for Dr. Yanagisawa, who was one of the inventors of famotidine. Dr. Fuji was Yamanouchi's in-house counsel and appeared in case it was necessary to represent Dr. Yanagisawa. Plaintiffs requested only hotel and travel expenses for Dr. Fuji, not his fees. I find that this reasonable and allowable.

Defendants claim that plaintiffs' photocopying expenses are excessive and not properly accompanied by vendor invoices. I am not persuaded. Given the plethora of papers in my Chambers, I am satisfied that plaintiffs spent the approximately $62

thousand[11] claimed on this expense, which included dates-stamping and binding.

Given plaintiffs' limited time to respond to the defendants' ANDA attack on famotidine (they had 45 days to file a complaint, and Judge Baer limited discovery to six months), and noting defendants' complaints about Yamanouchi's billing for car service and meals for their attorneys, I observe that, under the circumstances, transportation and meals were appropriate items. I also award plaintiffs the cost of storage of documents for this case.

■■■ I do not accept defendants' objections to plaintiffs' summary of expert witness fees and costs, which breaks down the expenses for each witness into separate categories for: fees for trial attendance, fees for deposition attendance, transportation expenses incurred for trial attendance, transportation expenses incurred for deposition attendance, hotel expenses during trial, and hotel expenses during depositions. The plaintiffs offered, in their reply, to provide me with actual receipts for these expenses, but I decline this, finding that this satisfies the "bill of costs" requirement under 28 U.S.C. § 1920.

■■■ Finally, it is appropriate for plaintiffs to be compensated for the preparation of the attorneys' fees submissions. *See Cruz v. Local Union No. 3 of the Int'l Brotherhood of Elec. Workers*, 34 F.3d 1148, 1160 n. 9 (2nd Cir.1994). I deny prejudgment interest.

Plaintiffs request a total of $2,336,339 in fees, and $525,682 in disbursements, for a total request of $2,862,022. I note that I am required to award only a *reasonable* fee. 35 U.S.C. § 285. Section 285 also permits the prevailing party to recover those disbursements that were reasonable and necessary for the case. *Lam. Inc. v.*

---

**10.** Similarly, I find that the plaintiffs' expenses for expert testimony is allowed, even where the experts did not actually testify at trial.

**11.** Defendants complain that plaintiffs have billed approximately $100 thousand in photo-

copying expenses. In their reply brief the plaintiffs did not contest this characterization of the amount, and there is no more accurate summary of copying expenses provided. However, the monthly statements show a total of only approximately $62 thousand billed.

*Johns–Manville Corp.,* 718 F.2d 1056, 1069 (Fed.Cir.1983). I need not consider the contractual arrangement between plaintiffs and counsel, *Blanchard,* 109 U.S. at 946, nor determine *exactly* the amount to be subtracted as excessive. *See Carey,* 711 F.2d at 1146 (courts may reduce lodestar by a percentage cut "as a practical means of trimming fat from a fee application"). I hereby award disbursements corrected to $400,000 for various factors discussed above. And I reduce the attorneys' fees award by 30% to a total of $1,635,440, to adjust for various charges I deem to be in excess of what should be levied against an adversary in a final reckoning. In my view this fairly addresses and assesses the "general force" of defendants' contentions, *id.,* at 1142.

An attorney and a client can make any arrangement vis-à-vis staffing of a case or the quality of the accoutrements furnished in the course of that service, but whether a court in law and equity can pass that along in toto to a losing adversary, that is what discretion is for.

The foregoing is so ordered.